[Civ. No. 16990. Fourth Dist., Div. One. Aug. 31, 1979.]

ROBERT E. McMILLIAN, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

[Crim. No. 8794. Fourth Dist., Div. One. Aug. 31, 1979.]

In re ROBERT E. McMILLIAN on Habeas Corpus.

**COUNSEL**

Robert E. McMillian, in pro. per., and Joseph F. Beard for Petitioner.

Randy Sue Pollock and Louis S. Katz as Amici Curiae on behalf of Petitioner.

Donald L. Clark, County Counsel, and Cameron Reeves, Deputy County Counsel, for Respondent in No. 16990.

No appearance for Real Party in Interest and for Respondent in No. 8794.

## Opinion

**BROWN (Gerald), P. J.**—In these consolidated proceedings, petitioner Robert E. McMillian, an attorney, seeks to annul two orders of the San Diego County Superior Court each adjudging him in direct contempt of court, and each sentencing him to jail for five days and imposing a fine of $500.[1]

The alleged contempts occurred in open court during the jury trial of a criminal case in which petitioner represented the defendant, Oberreuter. A codefendant had separate counsel. We said in our opinion on appeal affirming the judgments, "The record here reflects contentiousness, argumentativeness, overzealousness on both sides of the counsel table. The judge on occasion became a participant." (*People* v. *Oberreuter,* 4 Crim. No. 8819, filed June 27, 1979, unpublished.)

### Background

The trial began on October 19, 1977. On October 25 the court admonished Oberreuter for being late in returning from the noon recess at 1:33 p.m. instead of 1:30, although the court had previously convened at 1:33 on the 19th, 1:34 on the 20th and 1:38 on the 24th. The court had said on the 19th, the first day of trial, when counsel wanted to recess until

---

[1]Proceeding 4 Crim. 8794 was initiated by a petition for writ of habeas corpus filed in the California Supreme Court involving that court's original jurisdiction (Cal. Const., art. VI, § 10). The Supreme Court stayed enforcement of the contempt order, released McMillian from custody, and ordered the Sheriff of the County of San Diego to show cause before this court why the relief prayed for should not be granted. The sheriff (represented by county counsel) has filed a written return incorporating points and authorities which the superior court submitted in opposition to the petition. ¶ Proceeding 4 Civ. 16990 was initiated by a petition for writ of certiorari filed in this court. We treated the petition as a petition for writ of habeas corpus (*In re Buckley,* 10 Cal.3d 237, 247, fn. 1 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248]) and ordered the sheriff to show cause why the contempt order should not be annulled. The sheriff has filed a written return. ¶Because the petitions have legal issues in common and the facts underlying the contempt charges are related, we consolidated the proceedings.

2 p.m., "No, we run just like a ship: 1:30 the ship sails." Later in the afternoon of the 25th the court found Oberreuter in contempt for disregarding the court's previous admonishment to cease his facial and physical expressions while witnesses testified. After Oberreuter spent the night in jail for the contempt, McMillian requested his client be allowed to shave; the request was denied because the judge was "ready to proceed" although McMillian had asked to speak with the judge 10 minutes before the court convened in order to make the request. McMillian then moved for a mistrial which was abruptly denied without McMillian being allowed to give his reasons. When McMillian was allowed to explain his reasons for the motion, the judge said, "You are not making sense." McMillian thought the judge had made up his mind about Oberreuter's guilt and was influenced in his rulings by this belief. The judge responded he could very well hold McMillian in contempt for that "accusation." In the alternative McMillian then requested the judge to disqualify himself because of his prejudice against Oberreuter. The judge denied the motion, adding, "Sit down."

### CONTEMPT I (4 Civ. 16990)

■ The first alleged contempt occurred on October 27, the last trial day of the week. Without precise notice to McMillian, the prosecution suddenly rested at 2:15 p.m., after using five days to present its case. McMillian had no witnesses present except the defendant whom he expected to put on the stand. The court was aware McMillian intended to call defendant as a witness. The court ordered him to proceed, to put the defendant on the stand. McMillian said he was not ready, he wanted to talk more with his client. His request for a continuance was denied. The court insisted he proceed and found him in contempt for not proceeding.

Preferably, diligent defense counsel will be thoroughly prepared for trial to permit the prompt commencement of his case at whatever time the plaintiff rests. However, the theoretical aspects of trial and the realities during trial are not always identical.

A defendant in a criminal case is a very important witness. His liberty, one of his most precious possessions, is at stake. As much as his attorney may talk with him before and during the first steps of a trial, when the people have rested and the attorney and his client have seen and heard all the evidence presented against the defendant, an attorney cannot be faulted for wanting to reevaluate his client's situation and to discuss the case further with the defendant before putting him on the stand.

McMillian's request was reasonable. He was not insolent nor disrespectful. Considering the afternoon recess and the normal quitting time of the court, there remained but an hour of trial time. The court had taken no action against the plaintiff's counsel on October 24 in recessing 16 minutes early when no further witnesses were available, nor on October 26 when it excused the jury 39 minutes early in the afternoon when the plaintiff's counsel had no further witnesses available. The court said, as to the later instance, "It's pretty difficult to look in advance and see how long it's going to take." Yet McMillian was expected to know. A prosecution witness was late on October 27 and the court took no action in that instance. Is justice evenhanded?

At oral argument before this court respondent's counsel said McMillian was disrespectful to the trial court in referring to the court as "sir" when he said, "No, sir." We have found another instance in the record where he said, "No, sir" to the court. We have also found on opening day where codefendant's counsel said, "Yes, sir, your Honor; yes," and later in the day he said, "I agree, your Honor, yes, sir." In virtually all other instances McMillian said, "Your Honor." In open court the members of this court often have been called "gentlemen," "your Honors," "sirs." Where is the disrespect?

There was no contempt.

### CONTEMPT II (4 Crim. 8794)

█ The jury had returned to court from their deliberations with questions and with verdicts on some, but not all, charges. The judge asked McMillian if he wished the jury polled. He said he did but he wanted to wait until all the verdicts were in. The judge replied, "If you want them polled, we will poll them now." McMillian agreed, and said, "Additionally, I would like the jury polled as to whether they had knowledge that I had been contempted." The court cut him off and after polling the jury, admonished them to disregard the statement of counsel.

The jury retired and when the court asked why McMillian had made the statement about his contempt, McMillian immediately apologized, stating he had not done it deliberately. He was not insolent nor disrespectful. The court held him in contempt. Obviously it was a matter of timing. McMillian had hoped to have the jury polled when all the verdicts were in. And he made the same request at the end of the case when the balance of the verdicts came in; to which the court responded,

"There is no reason for me to inquire from this jury as to whether they had knowledge that I hold you in contempt. That was done out of their presence and *there is no suggestion to this court that there was anything that was brought to the attention of the jury.*" (Italics added.) Oberreuter was found guilty on all counts. The jury said they were not affected in arriving at their verdicts by anything other than the evidence presented to them. The court told the jury in dismissing them: "I think you have been a very outstanding, a very excellent jury. All I can say is I commend you for your service, for your devotion, for the good common sense that you have exercised during this trial. I wish I could say that you will be back again, but I don't know whether you will . . . I hope you go with the same good feelings toward us that we have toward you. It has been a pleasure having you as a jury in this Department and I hope we see some of you again as a spectator or as a juror."

Again there was no contempt.

In bringing this episode to an end we cannot help but wonder, when court calendars are crowded with important matters pleading for attention, is it necessary for intelligent people to cause scores of judicial hours to be spent in this fashion?

The orders are annulled.

Cologne, J., and Staniforth, J., concurred.