Jerry W. KEPLEY, Plaintiff–Appellant,

v.

Un Son KIM, Defendant–Appellee.

No. 91CA1502.

Colorado Court of Appeals,
Div. I.

Nov. 5, 1992.*

As Modified on Denial of Rehearing
Nov. 5, 1992.

* Opinion previously announced as non-published September 10, 1992 is now selected for publication.

Hecox, Tolley, Keene & Beltz, P.C., W. Thomas Beltz, Jeffrey Weeks, Colorado Springs, for plaintiff-appellant.

Retherford, Mullen, Rector & Johnson, Neil C. Bruce, Colorado Springs, for defendant-appellee.

Opinion by Judge DAVIDSON.

In this personal injury action, plaintiff, Jerry W. Kepley, appeals from the judgment entered upon a jury verdict in his favor against defendant, Un Son Kim. We affirm in part, reverse in part, and remand for a retrial on damages.

Plaintiff was injured in an automobile accident when the vehicle in which he was riding and which was driven by his wife collided with a vehicle driven by Kim. The plaintiff's vehicle was proceeding northbound through an intersection when it was struck by Kim's westbound vehicle.

Plaintiff filed this lawsuit alleging that Kim's negligence caused the accident and resulted in injuries to his back and neck. Although plaintiff's wife was originally a party plaintiff, by stipulation between the parties, her claims were dismissed with prejudice and she was designated as a nonparty in the action.

At trial, the jury returned a special verdict in favor of plaintiff allocating the percentages of negligence between Kim and plaintiff's wife as 60%–40%, respectively, and awarding $3000 in economic damages. The jury awarded nothing for damages for noneconomic losses or injuries or for physical impairment.

## I.

Plaintiff's first contentions relate to the jury's finding that both Kim and plaintiff's wife were negligent. He contends that the trial court erred by failing to direct a verdict that Kim was 100% negligent and by instructing the jury on negligence *per se.* We reject this contention.

### A.

At trial, a key determination was whether Kim entered the intersection on a yellow or a red light. Plaintiff argues that no reasonable person could have concluded from the evidence presented that the light was not red. Specifically, he points to Kim's own testimony that she approached the intersection on a yellow light, stopped for "around five seconds," then proceeded into the intersection. Based upon this statement, plaintiff's accident reconstructionist subsequently testified that it would have been impossible for the light to remain yellow for that duration and, thus, that the light must have been red when Kim entered the intersection. From this, plaintiff reasons that the trial court erred in denying his motion for directed verdict on the issue of Kim's liability. We disagree.

■ A motion for directed verdict can be granted only when the evidence, considered in the light most favorable to the party against whom the motion is directed, com-pels the conclusion that reasonable persons could not disagree, and when no evidence has been presented that could sustain the jury verdict against the moving party. If there is conflicting evidence, the question is properly submitted to the trier of fact. *United Bank v. One Center Joint Venture,* 773 P.2d 637 (Colo.App.1989).

■ Here, Kim also testified that the light was yellow as she approached the intersection and was "not red" when she entered. Further, the police officer who investigated the accident testified that Kim told him just after the collision that "the light was yellow, she went through and got hit." Finally, the accident reconstructionist admitted that if Kim stopped at the curb, rather than at the limit line, it was possible that she was in the intersection before the light changed to red.

Viewing this testimony in the light most favorable to Kim, we conclude that reasonable minds could differ on whether the light was yellow or red, and accordingly, this was an issue for the jury to decide.

■ Insofar as plaintiff argues that a reasonable person could not conclude that the negligence of anyone other than Kim contributed to the accident, we also disagree. The jury was instructed, without objection, that a driver must maintain a proper lookout and that, although a driver may have the right of way, such driver must exercise reasonable care and operate the vehicle with regard to existing conditions. Thus, even if we assume that Kim entered the intersection on a red signal or that she was otherwise unlawfully within the intersection at the time of the accident, the jury was not precluded from finding that plaintiff's wife's operation of her vehicle was negligent and contributed to the accident.

### B.

Plaintiff next contends that it was error for the trial court to instruct the jury that it could find that the nonparty was negligent *per se* if it found that she was in violation of Colorado Springs Municipal Or-

dinance § 22–17–105. We perceive no error.

▪ An instruction on negligence *per se* is proper if there is evidence to support a finding that the ordinance was violated. *Kelley v. Holmes*, 28 Colo.App. 79, 470 P.2d 590 (1970).

▪ The ordinance in question, which is substantively identical to § 42–4–505, C.R.S. (1984 Repl.Vol. 17), states in relevant part:

A. Green Indication.

1. Vehicular traffic facing a green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn; but vehicular traffic, including vehicles turning right or left, *shall yield the right of way* to other vehicles and to pedestrians lawfully within the intersection or in adjacent cross walk at the time such signal is exhibited.

B. Steady Yellow Indication.

1. Vehicular traffic facing a steady circular yellow [is] thereby warned that the related green movement is being terminated, or that a red indication will be exhibited immediately thereafter. (emphasis added)

Plaintiff contends that the negligence *per se* instruction based on this ordinance was improperly given because the ordinance is not applicable to the facts of this case. Specifically, he argues that part A of the ordinance was intended to apply only to vehicles which are completing left turns after the light turns red, not to cases such as this in which the driver allegedly had only slightly entered the intersection before the light had changed and then proceeded to accelerate through the intersection. We disagree.

Plaintiff's arguments notwithstanding, the language of the ordinance does not expressly restrict its application only to vehicles completing turns. Rather, it is applicable to any vehicles "lawfully within the intersection."

Moreover, the ordinance does not, as plaintiff further argues, condition the lawfulness of a person's entry into the inter-section on a yellow signal on either a driver's inability to stop or a driver's ability to clear the intersection before the light turns red.

Here, the evidence was conflicting as to whether Kim entered the intersection on a yellow light and how far into the intersection she might have traveled on that yellow. Thus, it was for the jury to determine whether Kim was lawfully within the intersection and whether plaintiff's wife violated the ordinance by failing to yield right of way. *See Kelley v. Holmes, supra.*

### III.

We also disagree with plaintiff's next contention that the trial court erred by not declaring a mistrial for juror misconduct.

▪ A new trial based on juror misconduct is not required unless there is a reasonable possibility that the misconduct affected the jury verdict. *Wiser v. People*, 732 P.2d 1139 (Colo.1987).

▪ Here, plaintiff brought to the attention of the trial court a conversation between an alternate and a regular juror in which the alternate allegedly spoke of not being able to hear and commented further that plaintiff's counsel was, in effect, leading one of plaintiff's witnesses. The regular juror allegedly nodded her assent. Plaintiff argues that this evidences a reasonable possibility that the regular juror was prejudiced by this statement by being led to believe that the witness' testimony was not credible.

The trial court subsequently conducted an *in camera* hearing with the two jurors. There the alternate stated that she had difficulty hearing the witness and, when asked by the court if she had said that counsel was putting words in the witness' mouth, she responded that she had said something about "repeating it." Both counsel declined to inquire further.

The regular juror told the court that the alternate had mentioned that she could not hear, and, upon further questioning by the court, she indicated that nothing that the alternate had said would influence her deci-

sion in the case. The court told these jurors to keep the *in camera* matter confidential. It then discharged the alternate because of her hearing difficulties, but retained the regular juror, determining that the regular juror had not been tampered with and was not improperly influenced by the alternate's comments.

Assuming without deciding that this exchange between these jurors amounted to juror misconduct, we conclude that there was no reasonable possibility that such misconduct affected the jury verdict. First, it is unclear from the hearing what had been spoken and whether it was prejudicial. And, neither counsel clarified this uncertainty with any inquiry. Secondly, the regular juror stated that, in any event, the exchange would not affect her decision in the case. Finally, this juror indicated that she would keep the *in camera* discussions confidential, and there is no evidence that any other juror became aware of the matter. Thus, we perceive no error. *See Denver Alfalfa Milling & Products Co. v. Erickson,* 77 Colo. 583, 239 P. 17 (1925) (every instance of misconduct will not destroy a verdict).

### IV.

Finally, plaintiff argues that the jury's award of zero dollars for noneconomic damages was inconsistent with its finding of $3000 in economic damages and was contrary to the evidence and the instructions given. Therefore, he contends that the trial court erred by refusing to set aside the verdict. We agree.

■ An appellate court has a duty to attempt to reconcile the jury's answers to special verdicts if it is at all possible based upon the evidence and the instructions given. *Lonardo v. Litvak Meat Co.,* 676 P.2d 1229 (Colo.App.1983). Also, a jury verdict will not be reversed for inconsistency if a reading of the record reveals any basis for the verdict. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981). Thus, an appellate court's task is to determine from the record whether there is competent evidence from which the jury logically could have reached its verdict. *Fletcher v. Porter,* 754 P.2d 788 (Colo.App.1988).

■ Here, the trial court instructed the jury that it should determine actual damages, insofar as they were caused by Kim's or the nonparty's negligence, for any loss of enjoyment of life, evidence to support the award of economic damages was that plaintiff required future treatment for chronic pain syndrome. There was no evidence of any expenses incurred by him at the time of trial which had not been paid by his insurer. Moreover, it was undisputed that his disc injury had been resolved by time of trial, that his remaining soft tissue injuries were of the type that generally heal by themselves with time, and that no surgical treatment for him was required. The record reveals no other condition for which he needed treatment or rehabilitation except his chronic pain.

Thus, although it may have been entirely proper for the jury to have rejected plaintiff's evidence and to have found no injuries, losses, or damages, we cannot reconcile its award of $3000 for treatment for chronic pain with a finding of no pain and suffering. Therefore, we conclude that the jury verdict of $3000 for future economic damages for treatment related to pain is inconsistent with a zero award for noneconomic damages.

In reaching this conclusion, we have considered and rejected Kim's argument that the jury's verdict was reconcilable because the $3000 award for economic damages could have been for loss in earning capacity, rather than for treatment of pain.

Here, on the special verdict form the jury was asked:

| | |
|---|---|
| What is the total amount of damages incurred by plaintiff for noneconomic losses or injuries, excluding any damages for physical impairment? | ANSWER: $0 |
| What is the total amount of damages incurred by the plaintiff for economic losses, excluding any damages for physical impairment? | ANSWER: $3,000.00 |

What is the total amount of damages incurred by the plaintiff for physical impairment?   ANSWER: $0

At trial there was expert testimony concerning plaintiff's disability rating based on the expert's finding that plaintiff's "permanent partial impairment [was] 16 percent of his whole body" due to soft tissue damage. However, because of its zero award for "total amount of damages incurred by plaintiff for physical impairment," we conclude that the jury must have rejected testimony that plaintiff had suffered physical impairment as a result of the accident, or any resultant disability.

Moreover, although plaintiff's attorney argued in closing that plaintiff's ability to earn a living in the future might be impaired, we find no evidence in the record to that effect. Specifically, there was no testimony that plaintiff's opportunities for advancement or change in vocation were affected by his alleged physical impairment. On the other hand, the record does reveal that plaintiff has been able to continue in his same job despite his complaints of pain, has not been absent from work for any notable periods except during the two months immediately following the accident, and has suffered no loss of earnings due to his injuries.

Further, we find instructive the recent decision in *Cooley v. Paraho Development Corp.*, —— P.2d —— (Colo.App. No. 91CA0404 & 91CA0859, September 24, 1992). In *Cooley,* this court held that despite the fact that the jury awarded zero dollars for physical impairment, it could be inferred that loss of earnings and of earning capacity due to physical impairment were nonetheless included in the $350,000 award for noneconomic damages and the $350,000 award for economic damages.

In so holding, the court noted that such inference was based on the instructions in the case and the facts presented. Importantly, those instructions told the jurors, *inter alia,* that, in considering damages in the physical impairment category, they should "not award damages *again* for losses or injuries *already* compensated" under either of the other two categories. *CJI–*

*Civ. 3rd* 6:1A (Version 2) (emphasis added). This court inferred that, because of the particular language of this instruction in combination with other instructions, the jury understood that it could include losses related to physical impairment in any of the three damages categories—noneconomic damages, economic damages, or physical impairment.

We note further that evidence of physical impairment was particularly compelling in *Cooley* in that the plaintiff there had suffered a ruptured stomach and the loss of his spleen, one kidney, and part of his pancreas as a result of the accident.

Here, however, based on the unique instructions given, we cannot reach the same inference as did the court in *Cooley.* In particular, the instruction here, which was modeled after *CJI–Civ. 3rd* 6:1A (Version 2), was modified in such a way that the jury could not include losses related to physical impairment in any but the physical impairment category. Specifically, in addition to being instructed to exclude any damages for physical impairment from the noneconomic or economic damages categories, the jury was told to indicate "the *total* amount of damages incurred by the plaintiff for physical impairment" in the third category. (emphasis added) Therefore, any award for physical impairment, including any resultant loss of earning capacity, was to be indicated only in the physical impairment category, in which section the jury specified a loss of zero dollars. *Cf. Herrera v. Gene's Towing,* 827 P.2d 619 (Colo.App.1992); *Hoffman v. Schafer,* 815 P.2d 971 (Colo.App.1991), *aff'd on other grounds,* 831 P.2d 897 (Colo.1992).

In addition, since the evidence of plaintiff's physical impairment due to his soft tissue injuries was disputed by the experts, the jury's finding here of no physical impairment was supported by the record.

For these reasons and contrary to Kim's argument, a determination that the jury's award of $3000 in economic damages might have been for loss in earning capacity for physical impairment is not supportable based on the instructions given and the facts presented.

We note further that, in our attempt to reconcile the jury's answers to the special verdict, we have considered the possibility that the jury intended to award $3000 in noneconomic damages and zero dollars in economic damages but mistakenly filled in the wrong blanks. However, because the jury verdict was by special verdict form, we cannot assume that its intent was other than was expressed.

Finally, in reaching our conclusion that the jury's verdict of $3,000 for economic losses was inconsistent with a zero award for noneconomic damages, we do not imply that there are not other circumstances in which a jury might award economic damages without noneconomic damages. Nor do we imply that on retrial, the jury is required to bring in an award for any damages. However, here, since the award of economic damages is necessarily for the treatment and alleviation of pain, the refusal to award noneconomic damages for pain and suffering cannot stand.

■ Insofar as plaintiff argues that a retrial on all issues, rather than a retrial on damages alone, is warranted, we disagree.

C.R.C.P. 59(a) provides that a new trial may be granted on "all or part of the issues" so long as the issue to be retried is entirely distinct and separable from the other issues involved in the case and the partial retrial can be had without injustice to any party. *See Bassett v. O'Dell*, 178 Colo. 425, 498 P.2d 1134 (1972).

We have concluded that there was no error regarding the issue of liability. And, a determination of how much plaintiff has suffered in damages is distinct and separable from the issue of who caused his injuries. Under these circumstances, a limited remand is proper.

The judgment as to the issue of liability is affirmed. The judgment as to the issue of damages is reversed, and the cause is remanded to the trial court for a retrial on damages.

STERNBERG, C.J., and NEY, J., concur.