Charlene HILL; Charlene Hill as the Personal Representative of the Estate of Waunita Nixon; and Charlene Hill as the Personal Representative of the Estate of Gertrude Nixon, Plaintiff–Appellee,

v.

Virgil A. BOATRIGHT; Gerald Boatright; and Boatright & Ripp, Defendants–Appellants,

and Concerning Ronald H. Nemirow, Appellant.

No. 93CA0614.

Colorado Court of Appeals, Div. III.

Aug. 11, 1994.

Rehearing Denied Sept. 15, 1994.

Certiorari Granted Feb. 21, 1995.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Denver, Cook & Lee, P.C., Stephen H. Cook, Larry D. Lee, Boulder, for plaintiff-appellee.

Cooper & Kelley, P.C., John R. Mann, Denver, for defendants-appellants and appellant.

Opinion by Chief Judge STERNBERG.

Defendants, Virgil A. Boatright, Gerald Boatright, and Boatright & Ripp (the Boatrights), appeal the judgment entered in favor of plaintiff, Charlene Hill, personal representative of the estates of Waunita Nixon and Gertrude Nixon. One of the attorneys representing the Boatrights also appeals the trial court's finding him in contempt of court. We affirm the judgment against the Boatrights except for the award of non-economic damages, which we reverse. We also reverse the contempt order.

Hill retained the Boatrights as attorneys in connection with the administration of the estates of Gertrude and Waunita Nixon, for which she had been appointed personal representative. In the course of the administration of the estate, the Boatrights assisted Hill in the sale of certain unencumbered real property owned by the estates. The purchaser of the property assigned two unsecured notes to Hill as partial payment. In addition, the purchaser borrowed a sum of money from a bank which took a security interest in the property.

When the notes became delinquent, Hill discovered that they were uncollectible. She retained other counsel who brought this action against the Boatrights for professional negligence, breach of fiduciary duty, breach of contract, and unjust enrichment. Assert-

ing numerous deficiencies in their legal representation, Hill alleged that the Boatrights had failed to represent her interests adequately with regard to the sale of the real property.

The jury returned verdicts in Hill's favor on her claims for negligence and breach of fiduciary duty, awarding total damages of $366,550, and judgment entered thereon.

## I.

The Boatrights first contend that Hill was not the real party in interest and that she lacked standing to bring this malpractice action on behalf of the Nixon estates. We are not persuaded.

■ Colorado's version of the Uniform Probate Code vests a personal representative with broad powers. Section 15–12–711, C.R.S. (1987 Repl.Vol. 6B) provides:

Until termination of his appointment a personal representative has the same power over the title to property of the estate that an absolute owner would have, in trust however, for the benefit of the creditors and others interested in the estate. This power may be exercised without notice, hearing, or order of court.

Further, a personal representative has the same standing to sue and be sued as the decedent had immediately prior to death. Section 15–12–703(4), C.R.S. (1987 Repl.Vol. 6B); see Fry & Co. v. District Court, 653 P.2d 1135 (Colo.1982).

■ If the personal representative believes that the affairs of the estate have been wound up, there are two alternative closing procedures available. Under §§ 15–12–1001 and 15–12–1002, C.R.S. (1987 Repl.Vol. 6B), the personal representative may petition the probate court to conduct a formal proceeding to review the affairs of the personal representative and to adjudicate the final settlement and distribution of the estate. If the court grants the petition, the personal representative's authority to act on behalf of the estate is immediately terminated. See § 15–12–610(2), C.R.S. (1987 Repl.Vol. 6B).

Alternatively, the personal representative may informally close an estate by filing a "closing statement" in which the personal representative asserts that he or she believes the affairs of the estate have been completed. Section 15–12–1003, C.R.S. (1987 Repl.Vol. 6B). Unlike under §§ 15–12–1001 and 15–12–1002, the authority of the personal representative does not terminate until one year after the filing of a closing statement. Section 15–12–1003(2), C.R.S. (1987 Repl.Vol. 6B); § 15–12–610(1), C.R.S. (1987 Repl.Vol. 6B) ("[A]n appointment of a personal representative terminates as provided in section § 15–12–1003 one year after the filing of a closing statement.")

■ The Uniform Probate Code, from which Colorado's probate code is modeled, uses "termination" to refer to events which end the personal representative's authority. "Closing" refers to circumstances which support the conclusion that the affairs of the estate are or are alleged to have been wound up. Uniform Probate Code § 3–1003 (Comment), 8 Uniform Laws Annot. 403 (1983).

■ If the language is plain and its meaning clear, a statute must be applied as written. Jones v. Cox, 828 P.2d 218 (Colo.1992).

■ The Boatrights argue that because Hill filed her closing statements prior to bringing this action, her authority as personal representative had ended and, therefore, she lacked standing as the real party in interest. We do not agree.

Pursuant to § 15–12–1003, Hill filed the closing statements in March 1991, and her authority to act as personal representative did not terminate until one year later, in March 1992. Within that period, in October 1991, Hill filed this action on behalf of the Nixon estates. We perceive nothing in the Colorado probate code that would nullify Hill's authority to act as personal representative within one year of filing the closing statements or any provision that would require Hill to re-open the estate to bring this action. See § 15–12–1008, C.R.S. (1987 Repl. Vol. 6B). Accordingly, we conclude, as did the trial court, that Hill, as personal representative, was the real party in interest.

## II.

The Boatrights next assert that the trial court abused its discretion in denying discovery of the files of the experts retained by Hill. We disagree.

In preparation for trial, in response to interrogatories, Hill listed as witnesses two attorneys who had assisted her with estate matters after she terminated the Boatrights' employment. They were to provide the following: (1) testimony about certain facts of the real estate transaction and (2) expert testimony of the applicable standard of care for attorneys.

The Boatrights requested that Hill produce the attorneys' files, including information concerning the real estate transaction and any probate proceedings involving the Nixon estates. Hill opposed the production of all of the files, maintaining that some documents were protected by the attorney-client and attorney-work-product privileges. The trial court denied the Boatrights' motion to compel production of documents on the grounds that Hill had provided the Boatrights with voluminous documentation and that Hill had not waived the attorney-client privilege. The Boatrights now assert an abuse of discretion in this ruling.

■ Pre-trial discovery issues are usually committed to the discretion of the trial court. *Bond v. District Court,* 682 P.2d 33 (Colo. 1984). Only in the case of a clear abuse of discretion will a ruling on a matter such as this be overturned. *See Rosenberg v. Grady,* 843 P.2d 25 (Colo.App.1992).

■ Hill provided 386 pages of documents from these witnesses' files, including the same documents given Hill's counsel. Hill also provided a reconstruction of the Boatright's file from the real estate transaction which had been discarded. Further, she provided a release to enable the Boatrights to obtain documents from the title company that had closed the real estate transaction, and she gave documents obtained from the real estate agent involved. In addition, Hill provided all letters and reports from the witnesses giving their opinions and the basis therefor. And, the Boatrights deposed both witnesses.

Considering the extent of discovery provided on this issue and the breadth of the trial court's discretion in discovery matters, we perceive no abuse requiring reversal in the record.

## III.

The jury awarded Hill damages in the amount of $366,550: $116,550 for her negligence claim, $50,000 for her breach of fiduciary duty claim, and a total of $200,000 in non-economic damages. The Boatrights argue that the damages awarded under Hill's negligence and breach of fiduciary duty claims are duplicative because Hill has only one loss under alternative claims for relief. In addition, the Boatrights argue that non-economic damages are not recoverable in a legal malpractice action. We agree with the latter contention, but reject the claim that the jury's award was duplicative.

### A.

The Boatrights assert that regardless of the number of claims asserted by Hill, she can have only one recovery for the same losses. At trial, the following instruction was submitted to the jury:

The plaintiff, Charlene Hill, has sued for the same losses on two different claims for relief. The claims for relief on which the plaintiff has sued and on which you have been instructed are: (1) negligence and (2) breach of fiduciary duty.

If you find for the plaintiff on more than one claim for relief, you may award her damages only once for the same losses.

The Boatrights maintain that because the jury awarded Hill compensatory damages under both negligence and breach of fiduciary duty, the jury either misapprehended its task or failed to follow the instructions, particularly the one quoted above. For these reasons, the Boatrights assert the judgment must be reversed and the cause remanded for a new trial.

■ It is presumed that the jury followed the trial court's instructions in rendering its verdict. *Woolsey v. Holiday Health Clubs,* 820 P.2d 1201 (Colo.App.1991). A

jury verdict will not be reversed for inconsistency if the record reveals any basis for the verdict. *Kepley v. Kim,* 843 P.2d 133 (Colo. App.1992).

■ A reviewing court must examine the record to determine if there was competent evidence from which the jury could have logically reached its verdict. Moreover, an appellate court has a duty to attempt to reconcile the jury's answers to special verdicts if possible. *City of Aurora v. Loveless,* 639 P.2d 1061 (Colo.1981).

■ The record shows that the jury completed one special verdict form, awarding $116,550 under a negligence theory for Hill's actual economic loss arising from the sale of the real property. This award is supported by competent evidence in the record and therefore may not be overturned. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

The jury also completed another special verdict form awarding Hill damages for the breach of fiduciary duty claim. Instead of awarding an exact sum, the jury wrote the following on the verdict form: "[A]ll plaintiff's attorney fees, their expenses, and all applicable court costs in this case." With agreement from the parties, the court instructed the jury to deliberate further and determine a sum certain for this element of damages. The jury did so and awarded the amount of $50,000.

Because Hill was awarded compensatory damages for two distinct losses in accordance with the jury instructions, the verdicts must stand.

### B.

We do agree, however, with the Boatrights that the $200,000 award of non-economic damages to Hill cannot stand.

Section 13–21–102.5, C.R.S. (1993 Cum. Supp.) defines non-economic loss or injury as "nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, including pain and suffering, inconvenience, emotional stress, and impairment of quality of life."

Hill brought this action as personal representative and as an individual on behalf of the Nixon estates. Although the issue of Hill's capacity to bring this action as a personal representative *and* as an individual was not determined at trial, we have concluded here that she could bring the action in her capacity as personal representative.

■ As personal representative of the estates, Hill cannot recover non-economic damages. The monetary damages awarded here directly benefit the estate, a legal entity. And, in our view, a legal entity such as an estate may not incur non-economic damages such as emotional stress or loss of enjoyment of life. *See Earth Scientists, Ltd. v. United States Fidelity & Guaranty Co.,* 619 F.Supp. 1465 (D.Kan.1985) (corporation, as a legal entity, cannot incur damages such as emotional distress).

■ Hill contends that she could have brought this legal malpractice action against the Boatrights on her own behalf, as a beneficiary of the estate and thus the award of non-economic damages may be sustained. However, we conclude that only the personal representative and not a beneficiary may represent an estate in the interest of the beneficiaries. *See* § 15–12–701, et seq., C.R.S. (1987 Repl.Vol. 6B); § 15–12–720 & 15–12–721, C.R.S. (1987 Repl.Vol. 6B) (personal representative may retain attorney services on behalf of the estate to defend or prosecute a claim, and reasonable attorneys fees may be paid from the estate funds); *see also In re Estate of Scott,* 40 Colo.App. 343, 577 P.2d 311 (1978) (absent a showing of inadequacy of representation by the administrator of an estate, a beneficiary may not appeal from an adverse ruling on a claim against the estate).

■ Also, if an attorney acts in pursuit of his or her attorney-client relationship, there is no duty owed to the trust beneficiaries and no liability to a third party absent fraud or malice. *In re Estate of Brooks,* 42 Colo.App. 333, 596 P.2d 1220 (1979). Negligence, not fraud or malice, is involved in this case.

■ The attorney-client relationship existed between Hill, as personal representative of the estates, and the Boatrights. Because of this relationship and under the cir-

cumstances disclosed by this record, the Boatrights did not owe a fiduciary duty to a third party, such as the beneficiaries of the estates. Accordingly, we hold that Hill, as a beneficiary, could not have brought this legal malpractice action.

For these reasons, the award of non-economic damages in favor of the personal representative acting on behalf of the estates cannot stand.

## IV.

The Boatrights assert the trial court abused its discretion in finding their attorney, Ronald H. Nemirow, in contempt of court. In addition, they assert that the contempt finding deprived the Boatrights of zealous representation by their counsel, thereby requiring a new trial. We agree with the first assertion, but not the second.

Plaintiff's counsel was conducting redirect examination of an attorney who had represented Hill in the underlying real estate transaction, after the Boatrights had withdrawn. While that attorney was testifying in this suit, the following colloquy took place:

PLAINTIFF'S COUNSEL: Would you review [Code of Professional Responsibility EC 5–9] in its entirety ...

WITNESS: Okay. Yeah, I've reviewed it.

PLAINTIFF'S COUNSEL: Are you both counsel and witness in this case?

WITNESS: No, of course not.

MR. NEMIROW: Objection, Your Honor. There's no reference to counsel in that paragraph.

THE COURT: Counsel, I'm not going to let this be misunderstood. This refers to an attorney who is both an attorney and a witness in the same case.

MR. NEMIROW: *Sir, it does not.*

THE COURT: Counsel, I'm instructing the jury that EC 5–9, Exhibit 54, refers to a lawyer who is both a witness and an attorney in the same case. I'm instructing you not to instruct the jury that what I've said is incorrect. That's what it refers to. Any suggestion that it doesn't is improper. (emphasis added)

At the next recess, outside the presence of the jury, the trial court informed Nemirow that he was in contempt of court. The trial court reserved imposing a sanction until the end of trial. At that time, the court stated:

I have taken the matter under advisement. As I've indicated previously, Mr. Nemirow's show of disrespect for this Court is unprecedented, not only for me, but in my 19 years of being both a trial attorney and more than six years on the bench, I've never observed any attorney stand up in front of a jury and address a judge as 'Sir' and say, You are wrong. That is the kind of conduct that is prejudicial to the administration of justice. It adversely reflects upon Mr. Nemirow's fitness to practice law. I consider it very serious.

The court ordered Nemirow to pay a fine of $500, ordered that Nemirow should not appear as counsel in his courtroom and that he should withdraw from any case assigned to his courtroom.

### A.

◼ Hill suggests that this court does not have jurisdiction to address the appeal of the contempt issue because a necessary party, the trial court, was not joined. After reviewing a supplemental response of the attorney held in contempt on this issue, we conclude that the district court is not a necessary party and that we do, therefore, have jurisdiction.

◼ A trial court is a necessary party in an original proceeding involving a contempt order because the writ is directed to the respondent court. *See Losavio v. District Court,* 182 Colo. 180, 512 P.2d 266 (1973).

However, the rule is different if, as here, there is a direct appeal of a summary contempt adjudication. In this case, the attorney has caused to be filed a separate notice of appeal and has designated himself as a party. *Cf. Maul v. Shaw,* 843 P.2d 139 (Colo. App.1992). Nothing further is required by rule or case law. Many appeals of contempt citations have been decided in which the trial court has not been joined. *See Handler v. Gordon,* 108 Colo. 501, 120 P.2d 205 (1941); *People v. Roberts,* 722 P.2d 443 (Colo.App.

1986). We perceive no reason to change this long-standing rule at this late date.

## B.

Contempt of court consists of any conduct which interferes with the court's administration of justice, which is derogatory of the dignity of the court, and which tends to bring the judiciary into disrespect or disregard. *See Losavio v. District Court, supra.* Pursuant to C.R.C.P. 107(b), a trial court may punish contempt summarily when an individual engages in direct contempt, that is, behavior in the presence of the court which obstructs justice and offends the dignity of the court. *Menin v. Denver County Court,* 697 P.2d 398 (Colo.App.1984). The determination whether certain conduct constitutes contempt is within the trial court's sound discretion, and the reviewing court may not reverse the trial court's ruling absent a clear abuse of discretion. *In re Marriage of Zebedee,* 778 P.2d 694 (Colo.App.1988).

While C.R.C.P. ·107 vests a court with broad authority to preserve the decorum of the courtroom, that power does have limits. In *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11, 16 (1954), the United States Supreme Court stated: "[T]he power ... entrusted to a judge is wholly unrelated to his personal sensibilities, be they tender or rugged. But judges also are human, and may, in a human way, quite unwittingly identify offense to self with obstruction to law." *See also People v. Ellis,* 189 Colo. 378, 540 P.2d 1082 (1975) (a judge's power to punish contempt is not designed to protect the judge's dignity but rather to protect the rights of litigants and the public by ensuring the administration of justice is not hindered).

We conclude that there was not sufficient basis here for the trial court to hold Nemirow in contempt and that, therefore, the court abused its discretion. In the context of the exchange between the court and counsel, as quoted above, we note that Nemirow made an objection. Without specifically overruling the objection, the court emphatically stated its interpretation of the ethical rule. Continuing his arguments, Nemirow then stated, "Sir, it does not."

Although we agree with the trial court's interpretation of the ethical consideration at issue, the question is not whether the court or Nemirow was correct in that interpretation. The issue is whether this comment standing alone constitutes an obstruction of the court's administration of justice or operates to bring the judiciary into disrespect or disregard. *See Losavio v. District Court, supra.* We conclude that it does not.

Our conclusion is supported by reference to other cases involving summary contempt orders. In *In re McConnell,* 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962), a lawyer's statement of his intention to press his legal contention until the court had a bailiff stop him was held not to amount to an obstruction of justice punishable by summary contempt. On the other hand, in *Menin v. Denver County Court, supra,* a summary contempt finding was upheld based on the fact that, after the trial court repeatedly warned counsel of misbehavior, counsel continued to interrupt the court and ignore its orders. Here, the trial court had not specifically ruled on the objection. Also, the record discloses no prior warning to counsel of any misbehavior. And, the trial court did not indicate that the words were shouted or delivered in an otherwise objectionable manner.

While we can perceive that a single incident by a lawyer can be so egregious as to constitute direct contempt, the words used in this case fall short of providing such a basis. Here, the use of the term "Sir," while perhaps not customary, is not one of disapprobation. *See McMillan v. Superior Court,* 96 Cal.App.3d 608, 158 Cal.Rptr. 17 (1979). And, the words "it does not," later characterized by the court in its contempt order as "you are wrong," while hardly a recommended form of argument, fall short of violating applicable standards and do not support a contempt finding.

Because of this conclusion, we do not address the contention that the trial court exceeded its power in ordering Nemirow not to appear as counsel in his courtroom and to withdraw from cases pending before him.

## C.

We are, however, not persuaded by the Boatrights' assertion that the procedure

used to impose sanctions for contempt deprived them of competent representation by their counsel.

The trial court properly reserved the imposition of sanctions against Nemirow until the end of trial. According to Nemirow's affidavit, "[t]hroughout the remainder of the trial, I feared further offending [the judge] at the risk of intensifying the sanctions he would level against me." However, our review of the record does not reveal any areas in which Nemirow's representation of his clients was deficient. To the contrary, the record indicates that Nemirow adequately and zealously represented his clients throughout the trial.

The judgment against the Boatrights is affirmed, except for the award of non-economic damages, which is reversed. The order of contempt is also reversed.

JONES and KAPELKE, JJ., concur.