The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY

February 20, 2025

## 2025COA19

**No. 24CA0261, *Estate of Schmier* — Probate — Formal Closure of Testate Estate**

The division concludes as a matter of first impression that either section 15-12-1001 or 15-12-1002, C.R.S. 2024, may apply to a request for formal closure of a testate estate when no person has challenged the validity of the decedent's will. To determine which section applies, a court must consider (1) whether the request for formal estate closure also includes a request to adjudicate testacy and (2) whether the orders settling the estate may impact persons other than the estate's personal representative or a devisee of the will. If a request for formal estate closure involves either condition, section 15-12-1001 applies.

COLORADO COURT OF APPEALS     **2025COA19**

---

Court of Appeals No. 24CA0261
Arapahoe County District Court No. 18PR31210
Honorable C. Apostoli, Magistrate

---

In re the Estate of Alice K. Schmier, a/k/a Alice Kathleen Schmier, deceased.

Tim Schmier,

Appellant,

v.

Raymond G. Schmier,

Appellee.

---

ORDERS REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

Announced February 20, 2025

---

Law Office of Jennifer S. Gormley, P.C., Jennifer S. Gormley, Steven L. Hill, Greenwood Village, Colorado, for Appellant

S. M. Moran Law Office, P.C., Sheena M. Moran, Littleton, Colorado, for Appellee

¶ 1     Tim Schmier appeals the magistrate's orders granting final settlement of the estate of the decedent, Alice K. Schmier (the decedent), and discharging the estate's personal representative, Raymond G. Schmier.  We reverse the magistrate's orders and remand the case with directions.

## I.     Background

¶ 2     The decedent died on November 7, 2018, leaving behind a will (the will) that she executed in March 2013.  The decedent's husband — Raymond — and three adult children, including Tim,[1] survived her.  As relevant here, the will provided for the establishment of the "Alice K. Schmier Family Trust" (Family Trust).  The will designated Raymond as the primary beneficiary and trustee of the Family Trust; in addition, it directed that, upon Raymond's death, the balance of the Family Trust be distributed by representation to the decedent's descendants.

¶ 3     On November 26, 2018, Raymond filed an application for informal probate of the will and requested that he be appointed as the estate's personal representative.  On December 3, 2018, the

_____

[1] Because the parties are related and share the same last name, we refer to them by their first names.  No disrespect is intended.

probate registrar entered an order admitting the will to informal probate proceedings and appointing Raymond as personal representative. A few days later, Raymond's attorney filed information about Raymond's appointment pursuant to section 15-12-705, C.R.S. 2024, and mailed copies of the information of appointment to Raymond, Tim, and the decedent's two other children.

¶ 4 Except for a few nonsubstantive filings, the case remained inactive for five years. But on December 7, 2023, Tim filed a "Petition for Formal Accounting and Inventory" (petition for accounting), asserting that the decedent's estate remained unadministered and contained unaccounted-for assets. Tim requested an inventory of and interim accounting for the estate from December 3, 2018, to the date of his filing.

¶ 5 On January 9, 2024, Raymond simultaneously filed three documents: (1) a "Response to Petition for Formal Accounting and Inventory, Filing of Accounting and Inventory, and Request to Proceed with Formal Closing"; (2) a "Petition for Final Settlement Pursuant to [Section] 15-12-1001, C.R.S." 2024, (the petition for final settlement); and (3) a "Notice of Hearing Without Appearance

on Petition for Final Settlement" (the notice).  The notice identified January 30, 2024, as the date of the hearing without appearance[2] (nonappearance hearing).  Raymond's attorney served the notice on Tim's attorney.

¶ 6    The following day, Raymond filed a "Receipt and Release" indicating that all distributions from the decedent's estate had been satisfied in accordance with the Family Trust.  A few hours later, the magistrate entered two orders closing the estate: (1) the "Decree of Final Discharge Pursuant to [Section] 15-12-1001, 15-12-1002, or 15-14-431, C.R.S." 2024, and (2) the "Order for Final Settlement" (jointly, the estate closing orders).

¶ 7    Fourteen days after the magistrate issued the estate closing orders, Tim filed a reply in support of his petition for accounting, which included an objection to the petition for final settlement.  In addition, Tim requested that the court hold a hearing on the issues he raised in the petition for accounting.

---

[2] "A hearing without appearance is a setting before or with the court for a ruling without the appearance of the parties."  C.R.P.P. 24(a).  The Colorado Rules of Probate Procedure (the C.R.P.P.) authorize "any appropriate matter" to be set for a hearing without appearance unless "otherwise required by statute, [the C.R.P.P.], or court order."  C.R.P.P. 24(b).

¶ 8    Before he filed his reply in support of the petition for accounting (and ten days after the magistrate entered the estate closing orders), Tim also filed a "Petition to Review Final Magistrate Order" (petition for review), in which he requested that the district court set aside the estate closing orders and direct Raymond to file a "proper" inventory and accounting supported by appropriate financial documents.  Raymond filed a timely response to Tim's petition for review.  Tim then filed this appeal, alleging that the magistrate erred by closing the probate estate without a hearing, as section 15-12-1001 required.  The district court didn't take any action on Tim's petition for review because of the pendency of this appeal.

¶ 9    Given this procedural posture, we first discuss the legal principles underlying review of a magistrate's orders.  We next discuss the legal principles applicable to this probate proceeding.  Finally, after applying those principles to the circumstances of this case, we conclude that we have jurisdiction to review the estate closing orders and, after conducting our review, determine that the magistrate erred by issuing the estate closing orders without first

holding a hearing on Tim's petition for accounting under section 15-12-1001.

## II. Appellate Jurisdiction Involving Magistrate Orders in Probate Cases

### A. Standard of Review

¶ 10    We review de novo the interpretation of statutes and rules related to a magistrate's authority to act in a particular case. *Andrews v. Miller*, 2019 COA 185, ¶¶ 6-8.  We also review de novo a court's interpretation and application of the Colorado Probate Code. *In re Estate of Dowdy*, 2021 COA 136, ¶ 9.  When a magistrate makes factual findings, we must accept those findings unless they are clearly erroneous, meaning that the findings have no support in the record.  *In re Marriage of Thorburn*, 2022 COA 80, ¶ 25.

### B. Applicable Magistrate Rules

¶ 11    As a threshold matter, we must determine whether we have jurisdiction to review the estate closing orders.  *See Allison v. Engel*, 2017 COA 43, ¶ 22, *overruled on other grounds by Wolf v. Brenneman*, 2024 CO 31.  To do so, we must decide whether the magistrate needed the parties' consent to act.  When the parties' consent *is not* required for the magistrate to act, C.R.M. 7(a) is the

"exclusive method" for the parties to seek review of a magistrate's orders. Under C.R.M. 7(a)(5), "[a] party may obtain review of a magistrate's final order or judgment by filing a petition to review such final order or judgment with the reviewing judge."

¶ 12　But when the parties' consent *is* required for a magistrate to act, C.R.M. 7(b) governs, and the magistrate's order or judgment is "appealed pursuant to the Colorado Rules of Appellate Procedure in the same manner as an order or judgment of a district court." Whether consent is necessary "depends not upon whether the parties actually consented, but upon whether consent is required by rules or statutes to invest a magistrate with authority to act." *Andrews*, ¶ 10 (citation omitted).

¶ 13　C.R.M. 6 and C.R.P.P. 4 govern the circumstances under which consent to a magistrate's actions is necessary in probate cases. C.R.M. 6(e)(1)(A) states that magistrates can "[p]erform any or all of the duties which may be delegated to or performed by a probate registrar . . . or clerk pursuant to C.R.P.P. 4" without the parties' consent. Under C.R.P.P. 4(a), those duties primarily consist of certain ministerial functions. *See In re Estate of Hillebrandt*, 979 P.2d 36, 38 (Colo. App. 1999). As relevant here, C.R.P.P. 4(a)(13)

provides that the court may delegate to the probate clerk — and therefore to a magistrate — the power and authority "[t]o enter estate closing orders in formal proceedings, if there is no objection to entry of such order by any interested person."  An "interested person" includes any person who has a property right in, or claim against, the estate of a decedent that may be affected by the proceeding.  § 15-10-201(27), C.R.S. 2024.  Determining who qualifies as an interested person is a "highly context dependent," fact-specific inquiry.  *In re Estate of Little*, 2018 COA 169, ¶ 38.

¶ 14     Under C.R.M. 6(e)(2)(A), a magistrate must receive the parties' consent to "[h]ear and rule upon all matters filed pursuant to C.R.S. Title 15," which includes, but isn't limited to, the probate and administration of wills.  *See* §§ 15-1-101 to 15-24-403, C.R.S. 2024.  And when magistrate consent is necessary, the consent generally must be in writing.  *See* C.R.M. 5(g).

¶ 15     In addition, when consent to a magistrate is necessary, a party may be deemed to have consented to the magistrate's actions if the party received notice of a hearing and failed to file a written objection within fourteen days of that notice.  C.R.M. 3(f)(1)(A)(ii); *see also* C.R.P.P. 4(c) (authorizing "[a]ny person in interest affected

7

by an order entered or action taken" under C.R.P.P. 4 to file, within fourteen days of "the entering of the order or the taking of the action," a motion requesting a hearing before a judge, and providing that the order or action will be final if no such motion is filed within the fourteen-day period, "subject to applicable rights of appeal").

¶ 16 Once a party consents to the magistrate's authority in a proceeding, that consent may not be withdrawn. C.R.M. 3(f)(1)(B).

### C. Applicable Probate Proceeding Legal Principles

¶ 17 Probate proceedings may be subject to informal procedures, formal procedures, or some combination thereof. *In re Estate of Santarelli*, 74 P.3d 523, 526 (Colo. App. 2003).

¶ 18 "If [a] personal representative believes that the affairs of the estate have been wound up . . . the personal representative may petition the probate court to conduct a formal proceeding to review the affairs of the personal representative and to adjudicate the final settlement and distribution of the estate" under section 15-12-1001 or section 15-12-1002. *Hill v. Boatright*, 890 P.2d 180, 183 (Colo. App. 1994), *aff'd in part and rev'd in part sub nom. Boatright v. Derr*, 919 P.2d 221 (Colo. 1996).

¶ 19    Sections 1001 and 1002 both govern formal proceedings to terminate the administration of a decedent's estate. *See Hill*, 890 P.2d at 183 (comparing formal proceedings under sections 1001 and 1002 to terminate the administration of an estate, with informal proceedings, which are governed by section 15-12-1003, C.R.S. 2024).

¶ 20    Section 1001's procedures apply to proceedings to formally terminate the administration of both testate and intestate estates. *See* § 15-12-1001(1) (The "personal representative or any interested person" may "petition . . . the court to determine testacy, if not previously determined."); Black's Law Dictionary 1783 (12th ed. 2024) (a person is "testate" if they left a will at death); *see also* § 15-12-401(1), C.R.S. 2024 ("A formal testacy proceeding is litigation to determine whether a decedent left a valid will."). But section 1002's procedures apply to proceedings to formally terminate the administration of only testate estates. *See* § 15-12-1002 (authorizing petitions for an "order of settlement of the estate which will not adjudicate the testacy status of the decedent" and requiring either dismissal of the proceedings or

amendments to conform with section 1001 if it appears that a part of the estate is intestate).

¶ 21   Section 1001 and section 1002 both allow a probate court to "consider the final account or compel or approve an accounting and distribution" and to "adjudicate the final settlement and distribution of [a decedent's] estate." § 15-12-1001(1); *see* § 15-12-1002.  But the court may only enter such orders under section 1001 "[a]fter notice to all interested persons and [a] hearing," § 15-12-1001(1), while section 1002 only requires "notice to all devisees and the personal representative and [a] hearing," § 15-12-1002.

### III.   Application

#### A.   We Have Jurisdiction to Review the Magistrate's Estate Closing Orders Under C.R.M. 7(b)

¶ 22   Tim's briefing doesn't explicitly address whether the estate closing orders fell under the purview of either C.R.M. 7(a) or (b) for purposes of determining which court — this court or the district court — is the appropriate forum for initial review of the magistrate's orders.  However, he asserts that section 1001 governed Raymond's petition for final settlement and that he is an

"interested person" under that section who was entitled to a hearing before the magistrate acted on the petition. If this contention is correct, C.R.M. 6(e)(2)(A) governed the magistrate's authority to act, and his consent was required before the magistrate could enter the estate closing orders.

¶ 23    Raymond asserts that Tim's appeal isn't properly before us because (1) Tim didn't object or request a hearing under C.R.P.P. 4(a)(13) before the magistrate issued the estate closing orders; (2) Tim admitted that his consent wasn't required in his petition for review; and (3) section 1002 governed the closure of the estate, so Tim isn't a person whose consent was required. We reject Raymond's arguments for three reasons.

¶ 24    First, although under C.R.P.P. 4(a)(13), a magistrate can issue estate closing orders without first obtaining the parties' consent unless an interested person objects, Tim wasn't provided with an adequate opportunity to object. The magistrate issued the orders only hours after Raymond filed the "Receipt and Release" with the court. Thus, we find unavailing Raymond's argument that the magistrate issued the estate closing orders under C.R.P.P. 4(a)(13) therefore subjecting them to review under C.R.M. 7(a).

11

¶ 25    Second, assuming, without deciding, that Tim admitted that his consent wasn't required in his petition for review, such an admission isn't determinative of whether C.R.M. 7(a) or (b) is the appropriate avenue for review of the estate closing orders. *See Andrews*, ¶ 10.

¶ 26    Third, as discussed below in Part III.B, we agree with Tim that the procedures in section 1001, not section 1002, governed the petition for final settlement and that he was an "interested person" under that section. Notice to all interested persons and a hearing were prerequisites to the magistrate's authority to enter the estate closing orders under section 1001. *See* § 15-12-1001(1). And because Tim objected to the petition for final settlement, the magistrate was also required to obtain his consent under C.R.M. 6(e)(2)(A) before entering the estate closing orders. *See Andrews*, ¶ 10; C.R.M. 6(e)(2)(A) (consent is necessary for a magistrate to "hear and rule" on all probate code matters); C.R.P.P. 4(a)(13) (divesting a magistrate of authority to issue estate closing orders when an objection has been filed). Because the parties' consent to the magistrate was required for the magistrate to act on the petition

for final settlement, C.R.M. 7(b) is the appropriate avenue for review of the estate closing orders in this case.

B.     Section 1001 Governed the Petition for Final Settlement

¶ 27     As already noted, the parties disagree on whether section 1001 or section 1002 governed the magistrate's actions with respect to the petition for final settlement.  In support of his contention that section 1002 governed, Raymond argues that section 1001 only "provides for intestate matters and is invoked in [section 1002] for any intestate portions of [an] estate."  Because the decedent was testate and no party requested that the court determine testacy, he argues that section 1001 doesn't apply.  In other words, he argues that because the decedent had an existing will and no one challenged its validity, section 1002 applied.  In essence, he espouses a reading of the statutes that *requires* the formal closing of a testate estate in which testacy hasn't been adjudicated to proceed under section 1002 — not section 1001 — *unless* there is a request to determine testacy.

¶ 28     We reject Raymond's restrictive interpretation of section 1001's plain language.  *See Springer v. City & Cnty. of Denver*, 13 P.3d 794, 804 (Colo. 2000) ("Where the legislature could have

13

chosen to restrict the application of a statute, but chose not to, we do not read additional restrictions into the statute."); *see also In re Estate of Colby*, 2021 COA 31, ¶ 14 (the probate code must be construed liberally to promote a speedy and efficient settlement of a decedent's estate).

¶ 29    Conversely, Tim argues that section 1002 applies only to informal probate proceedings. And he argues that once Raymond filed the petition for final settlement, the probate proceedings became formal. He further argues that the petition's caption and contents demonstrate that the administration of the estate was required to be closed under section 1001. But "[t]he substance of a [pleading], rather than the title applied to it, is controlling," *Alpha Spacecom, Inc. v. Hu*, 179 P.3d 62, 65 (Colo. App. 2007), and the petition for final settlement merely alleges that "determination of heirship has not been requested" as the basis for the court's authority to formally terminate administration of the estate.

¶ 30    Nonetheless, we agree with Tim that the proceedings became formal once Raymond filed the petition for final settlement. *See Santarelli*, 74 P.3d at 526 ("[T]he [personal representative]'s petition . . . to formally close the . . . estate converted the informal

14

proceeding into a formal one."); *see also* § 15-10-201(21) ("'Formal proceedings' means proceedings conducted before a judge with notice to interested persons.").

¶ 31     But we conclude that when, as here, a decedent dies with a will and no party has sought a determination of testacy, either section 1001 or section 1002 may apply to the formal closing of the decedent's estate.  Under such circumstances, section 1001 authorizes the formal closing of a testate estate with testacy remaining unadjudicated but also provides an avenue for adjudication of testacy upon the parties' request, while section 1002 authorizes the formal closing of a testate estate with testacy remaining unadjudicated but prohibits the parties from resolving that issue.  *Compare* § 15-12-1001(1) (contemplating the possibility of an existing will but authorizing the court to determine testacy if it has not previously been determined), *with* § 15-12-1002 (contemplating an existing will but prohibiting requests to adjudicate testacy); *see also Vieira v. Est. of Cantu*, 940 P.2d 190, 193 (N.M. Ct. App. 1997) (a petition for formal settlement of an estate that doesn't seek a determination of testacy is a formal proceeding but is not a formal *testacy* proceeding).

¶ 32    The parties have not pointed to any Colorado authority indicating which section should apply when both sections are potentially applicable, and we have found none. However, because the Colorado Probate Code was modeled on the Uniform Probate Code (UPC), we can consider law from other jurisdictions that have adopted the UPC to determine which section controls. § 15-10-102(1)-(2) ("This code shall be . . . applied . . . [t]o make uniform the law among various jurisdictions."); § 15-16-928, C.R.S. 2024; *cf. People in Interest of G.C.M.M.*, 2020 COA 152, ¶ 26 ("[W]e look to guidance provided by other states because, if a statute has been adopted from a uniform law, it should be construed to bring uniformity to the law in the various states that adopt it.").

¶ 33    Idaho, which has adopted the UPC, has two statutes that mirror Colorado's statutes. Idaho's section 15-3-1001 mirrors Colorado's section 1001, *see* Idaho Code § 15-3-1001 (2024), and section 15-3-1002 of the Idaho Code mirrors Colorado's section 1002, *see* Idaho Code § 15-3-1002 (2024).

¶ 34    The comment to Idaho's section 15-3-1002 is instructive in distinguishing the difference in the applicability of the two sections. The comment states, in relevant part,

16

> Section 3-1002 permits a final determination
> of the rights between each other and against
> the personal representative of the devisees
> under a will when there has been no formal
> proceeding in regard to testacy . . . .  Section
> 3-1001 permits a final determination of the
> rights between each other and against the
> personal representative of all persons
> interested in an estate.

Idaho Code § 15-3-1002, cmt.

¶ 35    Thus, the comment explains that Idaho's section 15-3-1001 is the appropriate avenue for formal closure of a testate estate when parties other than the personal representative and the will's devisees have an interest in the final determination of the estate. We find this reasoning persuasive in analyzing the applicability of Colorado's sections 1001 and 1002.

¶ 36    Given the foregoing, we conclude that a court considers two factors when determining which section applies: (1) whether the party's request for formal closure of the estate also included a request that testacy be adjudicated and (2) whether the orders settling the estate may impact persons other than the personal representative or a devisee of the will.

¶ 37    As discussed, the first factor wasn't at issue here.  But the magistrate was on notice that the second factor was present based

17

on Tim's petition for accounting.  Thus, we conclude that section 1001 provided the proper procedural avenue to effectuate the formal closing of the estate.[3]

¶ 38     Having determined that section 1001 applies, we next consider whether Tim was entitled to notice and the opportunity for a hearing under that section.

C.    Tim Was Entitled to Notice and a Hearing under Section 1001

¶ 39     Section 1001 provides that the court may enter estate closing orders "[a]fter notice to all interested persons and hearing."  The definition of "interested persons" includes a decedent's children and the beneficiaries (including contingent beneficiaries) of a trust. § 15-10-201(5), (27).  Tim is both a child of the decedent and a contingent beneficiary of the Family Trust.  Accordingly, he was entitled to notice of the petition for final settlement and a hearing on the same.

¶ 40     On January 9, 2024, Raymond issued the notice in which he requested that the matter be set for a nonappearance hearing on January 30, 2024.  *See* C.R.P.P. 24(b) (authorizing nonappearance

---

[3] Given our conclusion, we need not address Tim's remaining arguments in support of section 1001's applicability.

18

hearings in probate matters "[u]nless otherwise required by statute, [the C.R.P.P.], or court order"). Under C.R.P.P. 24(c)(2), "[a]ny interested person wishing to object . . . must file a specific written objection with the court at or before the hearing." And C.R.P.P. 24(c)(3) allows the court to take action without further notice or hearing if no objection is filed.

¶ 41 While the record supports the conclusion that Tim received proper notice of the request for a nonappearance hearing, the record doesn't support the conclusion that the magistrate provided Tim with the opportunity to object at or before the hearing scheduled for January 30, as C.R.P.P. 24(c)(2) required. Nor did the magistrate hold a hearing, at which Tim had the opportunity to be present, before taking action on Raymond's petition for final settlement.

¶ 42 Furthermore, the magistrate's findings in the order for final settlement are clearly erroneous because the court found that "[w]ritten objections to the proposed final settlement, if any, have been resolved." And by entering the estate closing orders one day after Raymond sought them, and within hours of Raymond's filing of the "Receipt and Release," the magistrate erred by denying Tim

19

the opportunity to challenge Raymond's accounting of the estate's inventory — which is the one thing Tim had been requesting all along.

¶ 43     Because the magistrate's errors prevented Tim from having his objection concerning the status of the estate heard, his rights as an interested party were substantially impacted. Therefore, we reverse the estate closing orders. *See* C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *Banek v. Thomas*, 733 P.2d 1171, 1178 (Colo. 1986) ("An error affects a substantial right when it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself."); *see also In re Estate of Gonzalez*, 2024 COA 63, ¶¶ 36-37 (concluding that the district court reversibly erred when it failed to hold a hearing on a party's objection to fees as statutorily required by section 15-10-604, C.R.S. 2024).

## IV. The Parties' Requests for Appellate Costs and Raymond's Request for Attorney Fees

¶ 44 Both parties request an award of their respective costs related to this appeal, and Raymond further requests an award of his appellate attorney fees.

¶ 45 C.A.R. 39(a)(3) provides that, "if a judgment is reversed, costs are taxed against the appellee." C.A.R. 39.1 provides that, "[i]f attorney fees are recoverable for the appeal, the principal brief of the party claiming attorney fees must include a specific request . . . and must explain the legal and factual basis for an award of attorney fees" and that "[m]ere citation to [C.A.R. 39.1] or to a statute, without more, does not satisfy the legal basis requirement."

¶ 46 Because we reverse the estate closing orders, we grant Tim's request for costs and deny Raymond's. And because Raymond failed to cite a basis for his request for attorney fees, we decline to address it. *See Cikraji v. Snowberger*, 2015 COA 66, ¶ 22 (declining to address unsupported request for attorney fees).

¶ 47 Furthermore, although we may tax an award of appellate costs under C.A.R. 39(c)(2), we remand to the district court for calculation

of the amount of appellate costs. *See In re Estate of Damon*, 892 P.2d 350, 358 (Colo. App. 1994), *aff'd*, 915 P.2d 1301 (Colo. 1996).

## V.    Disposition

¶ 48    The estate closing orders are reversed. This case is remanded to the district court with directions to reopen the estate and calculate the amount of Tim's appellate costs award. If Tim maintains his objection to the closure of the estate, the district court must hold a hearing as required by section 15-10-1001 after proper notice.

JUDGE LIPINSKY and JUDGE JOHNSON concur.