(822 P.2d 637)
No. 66,332

In the Matter of the Trusteeship of the Will of
Lester R. McDonald, Deceased.

Lena Mae McDonald, Joyce E. Hedden, and Jeannette Mae
Taton, *Appellants*, v. Charles E. McDonald, *Appellee.*

Opinion filed December 13, 1991.

*Dana P. Ryan* and *Peter L. Peterson,* of Clark, Mize & Linville, Chartered, of Salina, for appellants.

*Arthur B. McKinley,* òf Sublette, for appellee.

Before Briscoe, C.J., Rees, J., and Barry A. Bennington, District Judge, assigned.

Rees, J.: This is a trust administration proceeding in which the two challenged trial court rulings are incident to the ordered distribution of the Lester R. McDonald Trust corpus upon termination of the trust according to its terms.

The trust is a testamentary trust. The settlor was Lester R. McDonald, who died testate on February 14, 1984. The trustee is respondent Charles E. McDonald. The trust beneficiaries, six in number, are Veda McDonald, Vadon McDonald, petitioner Lena Mae McDonald, petitioner Joyce E. Hedden, petitioner Jeanette Mae Taton, and respondent Charles E. McDonald, Lena's son.

The questions before us relate to Lena's $38,258.71 distributive share of the trust corpus.

On May 30, 1990, Charles, in his capacity as trustee, undertook distribution of the $38,258.71 to Lena. He wrote one check, payable to Lena's order, in the amount of $11,286.48. It was

drawn against the trust account. He also wrote a second check, payable to Lena's order, in the amount of $26,972.23. It, too, was drawn against the trust account. The first check ultimately was delivered to Lena. The second check was not delivered to Lena. Charles endorsed Lena's name to the second check and deposited it to his personal checking account after placing his name on the check as a second endorser.

In view of our analysis and disposition of this appeal, we need not address Charles' trial evidence tending to establish authorization for his endorsement of Lena's name on the second check and to establish his entitlement to $26,972.23 according to a previous agreement and course of dealing with Lena.

The first of petitioners' two complaints is that the trial court erred in not imposing the penalty for conversion directed by K.S.A. 59-1704. That statute provides that "[i]f any person embezzles or converts to his or her own use any of the *personal property of a decedent* or conservatee, such person shall be liable for double the value of the property so embezzled or converted." (Emphasis added.)

The trial court accepted Charles' tendered return of the $26,972.23 realized by him by his deposit of the check to Lena in that amount but declined to order payment by Charles of an additional $26,972.23 pursuant to K.S.A. 59-1704. The trial court reasoned that the funds represented by Charles' $26,972.23 trusteeship check to Lena and deposited by him to his personal account was not "personal property of a decedent." We agree.

Upon the closing of Lester's probate administration case (Case No. 84-P-16), as memorialized by the journal entry of final settlement filed May 27, 1987, the probate estate assets remaining after distributions and payments necessary to satisfy Lester's specific devises and bequests, taxes, and probate estate administration costs and expenses were distributed and transferred to the "Lester R. McDonald Trust, Charles E. McDonald, Trustee." That transfer operated to pass legal title in and to the residuary probate estate assets to Charles as the trustee of the Lester R. McDonald Trust and to pass all beneficial interest in and to those assets to the designated six trust beneficiaries. The residuary assets became the trust corpus and the decedent, Lester, by his

legal representative, the probate estate executor, was divested of all right and title in and to those assets.

Prior to legislative change in 1939 (L. 1939, ch. 180, § 134), when the now-pertinent provisions of K.S.A. 59-1704 were enacted, G.S. 1935, 22-912 had provided that:

"If any executor or administrator shall neglect to sell any portion of the personal property which he is bound by law to sell, and retains, consumes or disposes of the same for his own benefit, he shall be charged therewith at double the value affixed thereto by the appraisers."

Thus, the earlier statutory double liability for conversion provision was, on its face, applicable to executors and administrators. In contrast, K.S.A. 59-1704 directs the imposition of double liability upon "any person" who has engaged in the conduct proscribed, that is, conversion of "personal property of a decedent or conservatee."

By operation of his tendered return of the $26,972.23 and his failure to appeal, Charles concedes he converted those funds.

Plainly, Charles is an "any person" and, again, the question at hand is whether his conversion of the $26,972.23 represented by the second trusteeship check to Lena was conversion of "personal property of a decedent."

It is said in *In re Estate of Engels*, 10 Kan. App. 2d 103, 108, 692 P.2d 400 (1984), that "[u]nder the provisions of 59-1704, once a conversion by a fiduciary is found, the fiduciary 'shall be liable' for double the amount converted. The legislature's use of the word 'shall' indicates to us that the penalty is mandatory." Thus, *Engels* teaches that the purpose of the statute is to punish a person who converts personal property of a decedent and to warn others such conduct is improper. 10 Kan. App. 2d at 108.

The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *National Cooperative Refinery Ass'n v. Board of McPherson County Comm'rs*, 228 Kan. 595, 597, 618 P.2d 1176 (1980). In *National Cooperative*, tax statutes were examined and construed most favorably to the taxpayer. The Supreme Court stated:

"Penal statutes must be statutorily construed in favor of the persons sought to be subjected to their operations. The rule of strict construction simply

means that ordinary words are to be given their ordinary meaning. Such a statute should not be so read as to add that which is not readily found therein or to read out what as a matter of ordinary English language is in it." 228 Kan. at 597.

We conclude that the same principle applies to K.S.A. 59-1704, a penalty statute. We are not free to expand the scope of K.S.A. 59-1704 to include trust funds when the statutory language explicitly refers to "personal property of a decedent."

Lester's probate estate and the trust corpus were two separate legal "entities."

We find the trial court correctly held that K.S.A. 59-1704 was not applicable in this case. We need not decide whether the converted $26,972.23 (a part of Lena's distributive share of the trust corpus) was Lena's property or was trust property. Our conclusion is that it was not personal property of a decedent; it was not Lester's property.

Petitioners' second complaint is that the trial court abused its discretion in awarding only $5,000 for attorney fees and $686.89 for expenses when their incurred attorney fees were $23,102.50 and their incurred expenses were $1,379.30. We are not persuaded that the trial court abused its discretion in arriving at the amount of its award for attorney fees and expenses.

We pause to note that the award of attorney fees and expenses apparently was made on the authority of K.S.A. 59-1703. We do not comment on the availability of an attorney fees and expenses award in this case under K.S.A. 59-1703 inasmuch as Charles has not raised the question. The sole question raised is whether the amount of the award made was the product of abuse of discretion by the trial court.

The amount of attorney fees to be awarded is a matter largely within the trial court's discretion and will be overturned only upon a showing of abuse of discretion. *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, 401, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988). The factors a trial court should consider in determining the amount of reasonable attorney fees are:

" 'the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount

of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney and the results secured.' " 12 Kan. App. 2d at 401-02.

The trial court stated in its order in this case that the issues raised were relatively simple due to Charles' trial admission of forgery. The trial court also noted that Charles offered to repay the $26,972.23, together with $500 attorney fees, upon receipt of the petition filed on July 6, 1990. After reviewing the time sheets prepared by the petitioners' attorneys, the trial court found that the attorneys had spent excessive time in trial preparation in light of the issues necessarily to be tried and with consideration being given to the fact that Lena's distributive share of the trust corpus was $38,258.71.

We conclude that the petitioners have not met their burden to affirmatively establish trial error. *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 602, 647 P.2d 1268 (1982).

Affirmed.