Virgil A. **BOATRIGHT**, Gerald Boatright, and Boatright & Ripp, Petitioners and Cross-Respondents,

v.

Rick **DERR**, as Personal Representative of the Estate of Charlene Hill; Rick Derr, as the Personal Representative of the Estate of Waunita Nixon; and Rick Derr, as the Personal Representative of the Estate of Gertrude Nixon, Respondents and Cross-Petitioners.

No. 94SC596.

Supreme Court of Colorado, En Banc.

June 24, 1996.

Rehearing Denied July 29, 1996.

Kennedy & Christopher, P.C., John R. Mann, Denver, for Petitioners and Cross–Respondents.

Haddon, Morgan & Foreman, P.C., Norman R. Mueller, Denver, Cook & Lee, P.C., Steven H. Cook, Larry D. Lee, Boulder, for Respondents and Cross–Petitioners.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Hill v. Boatright,* 890 P.2d 180 (Colo. App.1994), the court of appeals determined, *inter alia,* that Charlene Hill (Hill), the initial plaintiff-respondent and cross-petitioner,[1] had standing as personal representative of the estates of her mother, Waunita Nixon, and her aunt, Gertrude Nixon (hereafter collectively referred to as "the Nixon estates"), to pursue this civil action for professional negligence and breach of fiduciary duty against the defendants-petitioners and cross-respondents, Virgil A. Boatright, Gerald Boatright, and the law firm of Boatright & Ripp (the Boatrights). The court of appeals also determined that Hill was not entitled to recover noneconomic damages caused by the Boatrights' conduct either as the personal representative or as a beneficiary of the Nixon estates. Having granted certiorari to review the court of appeals' judgment, we affirm in part, reverse in part, and remand the case to the court of appeals with directions.

I

In June of 1987 Hill was appointed personal representative of the estate of her mother, Waunita Nixon. The inventory of estate assets included a duplex located in Wheat Ridge, Colorado, which at one time was owned by Waunita and her sister-in-law Gertrude Nixon. Waunita's will provided that her interest in the duplex would pass to Gertrude as a life estate unless Gertrude predeceased Waunita, in which event Waunita's interest in the duplex would pass to Hill and Hill's sister, Janice Kennedy (Kennedy). Hill and Kennedy were the named beneficiaries of the balance of Waunita's residuary estate.

Hill retained the Boatrights to represent her in probating Waunita's estate. Shortly after Hill's appointment as personal representative, it was determined that it would be in the best interest of the estate to sell the duplex. Hill intended to distribute half of the net proceeds of the sale to Gertrude and to divide the other half equally between her-

self and Kennedy. The duplex was sold for $124,000. As partial payment for the property, the purchaser assigned two promissory notes to Gertrude and Hill. While the extent of the Boatrights' involvement in the real estate transaction was disputed at trial, it is undisputed that the Boatrights represented Hill at the closing in March of 1988.

Gertrude died in April of 1989. Her estate included her one-half interest in the two promissory notes, and her will listed her son, George Wellman, and Hill as beneficiaries of Gertrude's interest in those promissory notes. Hill retained the Boatrights to assist her in probating Gertrude's estate and was appointed personal representative of Gertrude's estate in May of 1989.

In 1990 the purchaser of the duplex defaulted on the payment of the two promissory notes and it was discovered that the security for the notes was of little or no value. Hill then retained new counsel to represent her in connection with the Nixon estates. In March and April of 1991, Kennedy and George Wellman assigned their interests in the two promissory notes to Hill. In March of 1991 Hill filed closing statements for the Nixon estates pursuant to section 15–12–1003(1), 6B C.R.S. (1995 Supp.).

In October of 1991 Hill filed this action against the Boatrights alleging claims of professional negligence, breach of fiduciary duty, breach of contract, and unjust enrichment. Hill also alleged that the Boatrights' failure to protect her interests individually and in her capacity as personal representative of the Nixon estates caused her "emotional and financial damage."

The trial court entered summary judgment in favor of the Boatrights and against Hill on her breach of contract and unjust enrichment claims. In February of 1993, after a trial, a jury returned a verdict in favor of Hill on her negligence and breach of fiduciary duty claims in the amount of $366,550.82, which amount included an award of $100,000 for noneconomic damages on her negligence claim and $100,000 for noneconomic damages

1. Hill died during the pendency of this appeal. Her son, Rick Derr, is the personal representative of her estate and has been substituted as a    party for Hill individually and for Hill as personal representative of the Nixon estates.

on her breach of fiduciary duty claim. The Boatrights appealed the judgment entered on the jury verdict, asserting, *inter alia,* that Hill did not have standing to pursue her claims against the Boatrights after March of 1992, when her appointment as personal representative of the Nixon estates had terminated, and that noneconomic damages cannot be recovered in a legal malpractice action where such damages result solely from pecuniary loss.

The court of appeals determined, *inter alia,* that Hill had standing to pursue this action as personal representative of the Nixon estates because she commenced the action prior to termination of her appointments as personal representative for the Nixon estates. *Boatright,* 890 P.2d at 183. The court of appeals also concluded that Hill was not entitled to recover noneconomic damages either as personal representative of the Nixon estates or as a beneficiary of the Nixon estates. The court of appeals did not determine whether Hill was entitled to recover noneconomic damages as an individual.[2]

## II

■ The Boatrights contend that Hill lacked authority to represent the Nixon estates as personal representative thereof after her initial appointment terminated pursuant to sections 15–12–610(1), 6B C.R.S. (1987), and 15–12–1003(2), 6B C.R.S. (1987 & 1995 Supp.), of the Probate Code. We disagree.

■ In construing a statute, our responsibility is to effectuate the intent of the General Assembly in enacting the measure. *Lakeview Assocs. v. Maes,* 907 P.2d 580, 584 (Colo.1995); *General Elec. Co. v. Niemet,* 866 P.2d 1361, 1364 (Colo.1994). To carry out that responsibility, we first examine the language of the statute. *Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo.1994); *May Dep't Stores Co. v. State ex rel. Woodard,* 863 P.2d 967, 972 (Colo.1993).

Estates administered in unsupervised proceedings may be closed pursuant to section 15–12–1003(1) of the Probate Code, which section contains the following pertinent provisions:

(1) [A] personal representative may close an estate by filing with the court … a verified statement stating that he or she, or a prior personal representative whom he or she has succeeded, has or have:

(a) Fully administered the estate of the decedent by making payment, settlement, or other disposition of all lawful claims, expenses of administration and estate, inheritance and other death taxes … and that the assets of the estate have been distributed to the persons entitled. If any claims remain undischarged, the statement shall state whether the personal representative has distributed the estate subject to possible liability with the agreement of the distributees or it shall state in detail other arrangements which have been made to accommodate outstanding liabilities. . . .

§ 15–12–1003(1), 6B C.R.S. (1995 Supp.). The closing of an estate signifies that the personal representative has distributed the assets of the estate and has paid all known taxes, costs of administration, and claims against the state.

■ The closing of an unsupervised estate does not, however, relieve the personal representative of the estate from all responsibilities for estate matters. Section 15–12–1003(2) contains the following provisions concerning termination of the personal representative's authority:

(2) If no proceedings involving the personal representative are pending in the court one year after the closing statement is filed, the appointment of the personal representative terminates.

§ 15–12–1003(2), 6B C.R.S. (1987).[3] In addition, section 15–12–610(1), 6B C.R.S. (1987),

---

**2.** With respect to that question, the court of appeals stated that "[a]lthough the issue of Hill's capacity to bring this action as a personal representative *and* as an individual was not determined at trial, we have concluded here that she could bring the action in her capacity as personal representative." *Boatright,* 890 P.2d at 185.

**3.** Hill asserts that her authority to act as personal representative of the Nixon estates did not end in March of 1992 because these proceedings were pending at that time in the Denver District Court. She argues that the phrase "in the court" contained in § 15–12–1003(2) refers to any court, including the Denver District Court. However,

provides that "an appointment of a personal representative terminates as provided in section 15–12–1003 one year after the filing of a closing statement." The personal representative is thus authorized to act on behalf of the estate for a period of one year following the date of the closing. Such authorization permits distributees in an unsupervised estate administration proceeding to seek adjustment or correction of the distribution and enables the personal representative to take steps to make appropriate adjustments to the distribution pattern. *See* 1 American Law Institute & American Bar Association, Uniform Probate Code Practice Manual 304 (Richard V. Wellman ed.1977) (hereafter "UPC Practice Manual").

The Boatrights argue that Hill lost all authority to act on behalf of the estate in March of 1992, one year after she filed her closing statements, pursuant to the provisions of section 15–12–608, 6B C.R.S. (1987). We disagree.

■ Section 15–12–608, 6B C.R.S. (1987), contains the following language:

**Termination of appointment—general.** Termination of appointment of a personal representative occurs as indicated in sections 15–12–609 to 15–12–612. Termination ends the right and power pertaining to the office of personal representative as conferred by this code or any will; except that a personal representative, at any time prior to distribution or until restrained or enjoined by court order, may perform acts necessary to protect the estate and may deliver the assets to a successor representative. Termination does not discharge a personal representative from liability for transactions or omissions occurring before termination, or relieve him of the duty to preserve assets subject to his control, to account therefor, and to deliver the assets. Termination does not affect the jurisdiction of the court over the personal representative, but terminates his authority to represent the estate in any pending or future proceeding.

It must first be observed that this statute expressly provides that termination of an appointment as personal representative does not relieve the personal representative from liability to beneficiaries of the estate for acts performed on behalf of the estate prior to termination. *See* § 15–12–608 editor's note, 6B C.R.S. (1987); *see also* § 15–12–1005, 6B C.R.S. (1987) (successors' claims against personal representative for breach of fiduciary duty are barred six months after the filing of a closing statement). Only when a personal representative has been discharged does his or her liability as personal representative end. *See* UPC Practice Manual 303; Unif. Probate Code § 3–1003 cmt., 8 U.L.A. 403 (1989) (personal representative still subject to suit under section 608 even if appointment has terminated pursuant to section 1003).

More importantly, section 15–12–608 provides that termination of a personal representative will not occur with respect to the performance of acts "necessary to protect the estate." We conclude that the termination of Hill's position as personal representative of the Nixon estates in March of 1992 did not occur with respect to her authority to continue to act on behalf of the estates in this civil action commenced prior to the end of the one-year period referred to in sections 15–12–610(1) and 15–12–1003(2). While her closing statements reflected that the assets of the estates had been distributed, the record contains no evidence that she had been enjoined or restrained by court order from continuing to exercise her responsibility to protect the assets of the estates by maintaining this lawsuit. In our view, Hill was authorized to continue to represent the estates in this action in accord with her authority to perform acts "necessary to protect the estate."

The Boatrights emphasize that portion of section 15–12–608 prohibiting a terminated personal representative from representing the estate in any pending litigation. Proper-

section 15–10–201(10), 6B C.R.S. (1995 Supp.), defines the term "court" in the following manner: " 'Court' means the court or division thereof having jurisdiction in matters relating to the affairs of decedents and protected persons. This court is the district court, except in the city and county of denver, where it is the probate court." The Nixon estates were probated in the Jefferson County District Court.

ly construed, however, the statute is not internally inconsistent. The initial portion of section 15–12–608, providing that termination ends the authority of the personal representative to act on behalf of the estate, contains the significant exception that termination does not occur with respect to acts necessary to protect the estate. The final sentence of section 15–12–608, pertaining, *inter alia*, to the personal representative's authority to represent the estate in pending litigation, applies only in circumstances where termination has occurred. Under this construction of the statute, Hill's authority to continue pursuing this action to protect the estate did not terminate in March of 1992 and the prohibition contained in the final sentence of section 15–12–608 is not applicable.

▮ As the Boatrights note, at any time after a period of one year has elapsed from the date a closing statement has been filed a probate court may reappoint a personal representative to complete the administration of the estate. Section 15–12–1008, 6B C.R.S. (1987), contains the following provisions:

> **Subsequent administration.** If, after an estate has been settled and the personal representative discharged or after one year after a closing statement has been filed, it is determined that the estate has not been fully administered or fully distributed by reason of subsequently discovered property or for any other reason, the court, upon petition of any interested person, and upon notice as it directs, may appoint the same or a successor personal representative to complete the administration or distribution of the estate. If a new appointment is made, unless the court orders otherwise, the provisions of this code apply as appropriate; but no claim previously barred may be asserted in the subsequent administration.

Thus, a personal representative whose appointment has terminated by operation of sections 15–12–610(1) and 15–12–1003(2) may seek reappointment pursuant to section 15–12–1008 in order to fully administer the estate. However, this provision applies only to applications for reappointment made "*after* one year after a closing statement has been filed ...." § 15–12–1008 (emphasis added).

It would be at best anomalous to conclude that a personal representative who filed a lawsuit during the one-year period after the filing of a closing statement must wait until termination occurs and then obtain reappointment as personal representative to either continue the litigation or, if it is dismissed in the interim, to refile the lawsuit. Statutes should be construed to avoid rather than to enhance absurd consequences. *Board of County Comm'rs v. IBM Credit Corp.*, 888 P.2d 250, 252 (Colo.1995).

We conclude that the availability of the procedure established by section 15–12–1008 does not affect the authority conferred upon a personal representative of an estate by section 15–12–608 to protect the estate. In our view, that authority includes the authority of the personal representative to continue to represent the estate subsequent to the one-year period referred to in section 15–12–1003(2) and 15–12–610(1) in lawsuits filed on behalf of the estate during that one-year period. We thus affirm the court of appeals' conclusion that Hill had authority to represent the Nixon estates as the personal representative thereof throughout the pendency of this lawsuit.

### III

▮ In reversing the jury's verdicts awarding Hill noneconomic damages, the court of appeals held that she had no capacity to recover such damages either on behalf of the estate or as a beneficiary of the estate. *Hill*, 890 P.2d at 185–86. Hill argues here, as she did before the court of appeals and at trial, that as the Boatrights' client she was entitled to recover damages for noneconomic injuries individually. We agree with her argument in the circumstances of this case.

### A

It must be noted initially that the Boatrights contend, *inter alia*, that noneconomic damages resulting solely from pecuniary loss are not recoverable in legal malpractice actions in Colorado, regardless of whether liability is asserted on a theory of negligence or

on a theory of breach of fiduciary duty.[4] This court has not addressed the issues inherent in the general question of whether and, if so, under what circumstances noneconomic damages are available as a remedy for persons alleging legal malpractice claims.[5]

■ Whatever the merits of the Boatright's argument, we do not address it in this certiorari proceeding. At trial, the Boatrights did not argue that noneconomic damages cannot be recovered by a client who establishes that his or her attorney committed the torts of negligence and breach of fiduciary duty where the noneconomic damages result solely from pecuniary loss. The Boatrights did file a pretrial motion to strike a portion of Hill's claim for noneconomic damages because of alleged discovery abuses by Hill. The motion contained a footnote asserting that because Hill was not in any "zone of danger" her alleged noneconomic injuries were not foreseeable and that because such injuries were not alleged to have resulted from wanton and willful misconduct, she could not recover damages for emotional distress.[6] The Boatrights renewed this argument in their objections to instructions on

4. Hill's claim of breach of contract was dismissed by the trial court; the propriety of that ruling is not before us.

5. The Boatrights cite numerous cases in support of their argument that noneconomic damages resulting from pecuniary loss are not recoverable in a legal malpractice action. *See, e.g., Merenda v. Superior Court*, 3 Cal.App.4th 1, 4 Cal.Rptr.2d 87, 91 (1992); *Richards v. Cousins*, 550 So.2d 1273, 1278 (La.Ct.App.1989); *Hilt v. Bernstein*, 75 Or.App. 502, 707 P.2d 88, 95–96 (1985); *cf. Wagenmann v. Adams*, 829 F.2d 196, 221 (1st Cir.1987) (applying Massachusetts law); *Holliday v. Jones*, 215 Cal.App.3d 102, 264 Cal.Rptr. 448, 457–58 (1989). In this case the jury instructions informed the jury that Hill would be entitled to recover noneconomic damages "insofar as they have been proved by a preponderance of the evidence and insofar as they were caused by" the Boatrights' conduct—conduct that the jury found to be negligent and to constitute a breach of fiduciary duty to Hill. In *Salley v. Childs*, 541 A.2d 1297, 1298 (Me.1988), the court concluded that a client was entitled to recover noneconomic damages from an attorney in a legal malpractice action based on negligence. Other jurisdictions have recognized that in some circumstances clients may recover noneconomic damages in legal malpractice actions based upon conduct constituting breach of fiduciary duty. *See, e.g., Stanley v. Richmond*, 35 Cal.App.4th 1070, 41 Cal.Rptr.2d 768, 784 (1995); *Perez v.*

damages and in their motion for new trial. However, the Boatrights at no time prior to the filing of their brief in the court of appeals argued that noneconomic damages are not available to clients who prevail in legal malpractice actions based on allegations of negligence and breach of fiduciary duties where the noneconomic damages are a consequence of purely pecuniary loss. We will not address issues raised for the first time in appellate proceedings. *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 514 (Colo.1986).

**B**

The court of appeals held that Hill could not recover noneconomic damages in her capacity as personal representative of the estate because the estate is a legal entity and therefore cannot sustain noneconomic damages. *Boatright*, 890 P.2d at 185. The court cited no authority for the statement that an estate is a legal entity. In *Heuschel v. Wagner*, 73 Colo. 327, 329, 215 P. 476, 477 (1923), we reached a contrary conclusion. Many other jurisdictions have also determined that

*Kirk & Carrigan*, 822 S.W.2d 261, 266–67 (Tex. Ct.App.1991) (complaint also alleged negligent and intentional infliction of emotional distress); *cf.* CJI–Civ.3d 26:4 notes on use (instruction on actual damages for breach of fiduciary duty "specifically drafted" to permit court to apply noneconomic damages statute, section 13–21–102.5, 6A C.R.S. (1987 & 1995 Supp.)).

6. The footnote refers to the decisions of *Trimble v. City and County of Denver*, 697 P.2d 716 (Colo. 1985), and *Hale v. Morris*, 725 P.2d 26 (Colo. App.1986), in support of these arguments. In *Trimble*, we held that damages for mental suffering are not available in breach of contract actions absent willful and wanton conduct. *Trimble*, 697 P.2d at 731. In *Hale*, the court of appeals held that a mother who was not present when the defendant dentist negligently treated her son and was thus not personally subjected to any threat of direct harm by the dentist did not state a claim for relief for the tort of negligent infliction of emotional distress. *Id.* at 28, 29. In *Hale*, questions of foreseeability arose because the mother's tort claim was for negligent infliction of emotional distress. Hill has made no such claim in this case. *See Towns v. Anderson*, 195 Colo. 517, 520, 579 P.2d 1163, 1165 (1978) (adopting Restatement (Second) of Torts § 436 (1965)).

an estate is not a legal entity. *See, e.g., Von Gibson v. Lynch,* 197 Cal.App.3d 725, 243 Cal.Rptr. 50, 53 n. 4 (1988) (at common law, estate is neither person nor entity); *Hogg v. Walker,* 622 A.2d 648, 653 (Del.1993) (trust estate not separate legal entity); *Estate of Norton v. Hinds,* 182 Ga.App. 35, 354 S.E.2d 663, 664 (1987); *In re Marriage of Schauberger,* 253 Ill.App.3d 595, 191 Ill.Dec. 675, 624 N.E.2d 863, 866 (1993) (estate has no capacity to sue and be sued); *Estate of Lemaster v. Hackley,* 750 S.W.2d 692, 694 (Mo.Ct.App. 1988); *100 W. 72d St. Assocs. v. Murphy,* 144 Misc.2d 1036, 545 N.Y.S.2d 901, 902 (1989); *Goss v. Hutchins,* 751 S.W.2d 821, 824 (Tenn. 1988) (citing *Heuschel,* 73 Colo. at 329, 215 P. at 477); *Henson v. Estate of Crow,* 734 S.W.2d 648, 649 (Tex.1987). Some courts appear to recognize the contrary view expressed by the court of appeals. *See, e.g., Vaughn v. Speaker,* 126 Ill.2d 150, 127 Ill. Dec. 803, 806, 533 N.E.2d 885, 888 (1988), *cert. denied,* 492 U.S. 907, 109 S.Ct. 3218, 106 L.Ed.2d 568 (1989); *In re Will of McDonald,* 16 Kan.App.2d 293, 822 P.2d 637, 639 (1991);

*Geiger v. Wisconsin Health Care Liab. Ins. Plan,* 538 N.W.2d 830, 832 (Wis.Ct.App. 1995). We also note that in adopting general definitions applicable to all statutes "unless the context otherwise requires," the General Assembly has defined the term "person" to mean "individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, or association, or any other legal entity." § 2–4–402(8), 1B C.R.S. (1980).

■ We need not revisit the question of the legal status of an estate to determine whether Hill was entitled to an award of noneconomic damages as an individual. At trial, Hill contended that she was entitled to recover noneconomic damages "personally" as well as in the capacity of personal representative of the Nixon estates.[7] We conclude that under the circumstances of this case, the jury properly awarded Hill noneconomic damages personally, as the Boatrights' client.[8]

---

7. The complaint alleges, *inter alia,* that Hill retained the Boatrights "to represent her interests, personally, and as the Personal Representative of the [Nixon estates]"; that as a proximate result of the Boatrights' negligence Hill, "personally, and as the Personal Representative of the [Nixon estates], suffered emotional damages and financial damages"; that the Boatrights owed certain fiduciary duties "to Charlene Hill personally, and Charlene Hill as Personal Representative of the [Nixon estates]"; and that "[a]s a result of the [Boatrights'] breach of fiduciary duties owed to the Plaintiffs, Plaintiffs incurred emotional damages and financial damages." In like vein, the instructions informed the jury of Hill's alleged dual role. In describing the parties' claims, the trial court described the plaintiffs as "Charlene Hill, individually and as the Personal Representative of the [Nixon estates]", and informed the jury that Hill claimed "that she and the two Estates have suffered economic and noneconomic damages as a result of the [Boatrights'] breach of fiduciary duties and negligence." In defining the elements of the negligence and breach of fiduciary duty claims, the jury was informed that such elements must be proved "[in] order for the plaintiff, Charlene Hill, individually, or as the Personal Representative of the [Nixon estates] to recover from the [Boatrights]" on such claims. The instructions regarding the factors to be considered by the jury with regard to existence of any fiduciary duty, the instruction pertaining to damages for breach of fiduciary duty, the special interrogatories, and the special verdict forms also refer to "the plaintiff, Charlene Hill, individually, or as the Personal Representative of [the

Nixon estates]." The instruction pertaining to damages for negligence refer to "the plaintiff Charlene Hill."

8. Hill also argues that she is entitled to recover noneconomic damages as a beneficiary of the two estates. The court of appeals addressed and rejected that argument. *Boatright,* 890 P.2d at 185–86. However, at trial Hill did not allege that she sought recovery as a beneficiary of the Nixon estates, but only personally and as the personal representative of the estates. The jury instructions on Hill's negligence and breach of fiduciary duty claims with respect to the Boatrights' duties, the special interrogatories, and the special verdict forms did not refer to Hill as a beneficiary.

We are aware that at trial the following colloquy occurred between Hill's counsel and John Brian Dougherty, a witness called for Hill:

Q. Mr. Dougherty, do you have an opinion, based on a reasonable degree of legal probability, whether or not the duty to advise the client and disclose all the information as relevant was discharged in this case?

A. Yes, I do.

Q. What is that opinion?

A. My opinion is that that duty was not fulfilled toward Charlene Hill.

Q. As an individual or as an estate representative?

A. As both. I'm sorry. Whenever we're talking about Charlene Hill, I'm talking about in both capacities. She had an interest as an individual in the sense she's eventually going

The Boatrights assert that at trial Hill argued that she was damaged only in her capacity as personal representative, that Hill's argument that she brought this action individually is at best a restatement of her position that she is entitled to recover noneconomic damages as a beneficiary of the estate, and that there is no testimony to support the proposition that the Boatrights represented Hill individually in addition to representing her as personal representative of the Nixon estates.

As previously noted, the pleadings, instructions, jury interrogatories and special verdict forms establish that at trial Hill asserted claims of negligence and breach of fiduciary duty both as the personal representative of the Nixon estates and personally. We have also determined that we will not address the question of whether Hill is entitled to recover noneconomic damages as a beneficiary of the Nixon estates.

At trial the Boatrights asserted in their pleadings that Hill hired them to represent her in her capacity as personal representative of the estates. They did not, however, seek a trial court ruling that Hill was not entitled to pursue her malpractice claims of negligence and breach of fiduciary duty personally, as their client.[9] While the Boatrights did produce evidence at trial to establish that they represented Hill in her capacity as personal representative of the Nixon estates, they did not produce evidence that they did not represent Hill personally. While Hill presented very little evidence to support her allegations that she was a client of the Boatrights not only as the personal representative of the Nixon estates but also personally, that evidence must be viewed in the light most favorable to Hill, together with all permissible inferences to be drawn therefrom. *See Moses v. Diocese of Colo.,* 863 P.2d 310, 314 n. 1 (Colo.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994); *People v. Young,* 192 Colo. 65, 68, 555 P.2d 1160, 1162 (1976).

We conclude that the evidence, when so viewed, supports the jury's implicit finding that Hill pursued this action personally as well as in her capacity as personal representative of the Nixon estates. When viewed in the light most favorable to Hill, the evidence also supports the finding that Hill personally suffered noneconomic damages as the result of the Boatrights' negligence and breach of fiduciary duty to her.[10] *See* § 13–21–102.5, 6A C.R.S. (1987 & 1995 Supp.). We thus conclude that Hill was entitled to recover the noneconomic damages awarded to her by the jury, not in the capacities of personal representative or beneficiary of the Nixon estates, but in her personal capacity as the client of the Boatrights. *See Salley v. Childs,* 541 A.2d 1297, 1298 (Me.1988).

## IV

For the foregoing reasons, we affirm the judgment of the court of appeals insofar as that court determined that Hill was entitled to recover economic damages from the Boatrights for the benefit of the Nixon estates in her capacity as personal representative of those estates. We reverse the court of appeals' determination that Hill was not entitled to recover noneconomic damages and return the case to the court of appeals with

---

to become a beneficiary of the estates and get the property, and she's also acting as a personal representative at this time, a personal representative being a person who handles the estate.

So it doesn't matter which capacity you talk about her in. The duty that the Boatrights have to her is the same in either circumstance. Whether she's an individual or acting as a personal representative doesn't make a bit of difference.

In spite of this testimony, Hill never requested the jury to award her damages as a beneficiary of the estates. In view of the posture of the case at trial, we do not address this issue here. *Paine,*

*Webber, Jackson & Curtis, Inc. v. Adams,* 718 P.2d 508, 514 (Colo.1986).

9. The Boatrights did not move for dismissal, summary judgment, judgment notwithstanding the verdict, or new trial on the issue of Hill's capacity to pursue her claims personally, as the Boatrights' client.

10. The Boatrights do not here assert that Hill did not suffer economic damages, and Hill does not challenge the court of appeals' determination that she could not recover noneconomic damages as the personal representative of the Nixon estates.

directions to reinstate the jury's award of $200,000 in noneconomic damages to Hill.

SCOTT, J., dissents and VOLLACK, C.J., joins the dissent.

Justice SCOTT, dissenting:

This case requires that we determine the force of section 15–12–608, 6B C.R.S. (1987). I agree that section 15–12–608 expressly provides for the termination of an appointment as personal representative. Therefore, I cannot agree that under section 15–12–608, a personal representative's authority does not terminate and is indefinite "with respect to the performance of acts 'necessary to protect the estate.'" Maj. op. at 225. To the contrary, section 15–12–608 expressly provides that "[t]ermination ends the right and power pertaining to the office of personal representative." § 15–12–608. Section 15–12–608 terminated Charlene Hill's right to pursue litigation as a personal representative of the estate in March of 1992. Therefore, unlike the majority, I would conclude that Charlene Hill was without the "right and power" to pursue the civil action as the personal representative of the Nixon estates. Accordingly, I respectfully dissent.

## I

Our primary task in construing a statute is to give effect to the intent of the General Assembly. *Scoggins v. Unigard Ins. Co.,* 869 P.2d 202 (Colo.1994); *Farmers Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991). To discern intent, we first look to the plain language of the statute. *People v. Terry,* 791 P.2d 374 (Colo.1990). If the language of the statute is clear and the intent of the General Assembly may be discerned with certainty, it is not necessary to resort to other rules of statutory interpretation. *McKinney v. Kautzky,* 801 P.2d 508 (Colo.1990). Even if the intent of the General Assembly can be disputed, if the plain language of the statute is clear, it is controlling. *Scoggins,* 869 P.2d at 205. We should not read a statute to accomplish something the plain language does not suggest, warrant, or mandate. *See*

*Schlessinger v. Schlessinger,* 796 P.2d 1385 (Colo.1990) (holding that the court should be careful to avoid judicial legislation by adding to a statute that which the legislature did not deem proper); *Jones v. People,* 155 Colo. 148, 393 P.2d 366 (1964) (stating the court may not change the laws enacted by the legislature).

## II

Section 15–12–608 provides that the tenure of a personal representative is not without limits:

> **Termination of appointment—general.** Termination of appointment of a personal representative occurs as indicated in sections 15–12–609 to 15–12–612.[1] Termination ends the right and power pertaining to the office of personal representative as conferred by this code or any will; except that *a personal representative, at any time prior to distribution or until restrained or enjoined by the court order, may perform acts necessary to protect the estate and may deliver the assets to a successor representative.* Termination does not discharge a personal representative from liability for transactions or omissions occurring before termination, or relieve him of the duty to preserve assets subject to his control, to account therefor, and to deliver the assets. Termination does not affect the jurisdiction of the court over the personal representative, but terminates his authority to represent the estate in any pending of future proceeding.

(Emphasis added.)

The plain language of the second sentence of section 15–12–608 indicates that upon termination of appointment, the personal representative's "right and power" ends. The statute, however, provides one exception to this loss of authority: When the personal representative acts to protect the estate or to "deliver the assets to a successor representative." § 15–12–608. However, the exception is limited in its own terms to that "time prior to distribution." *Id.* Thus, after distribution, when there are no assets to protect, the

---

**1.** Section 15–12–610(1) provides that "appointment of a personal representative terminates as provided in § 15–12–1003 one year after the filing of the closing statement."

statute's plain language terminates the personal representative's authority to "perform acts [ ] to protect the estate." As a result, the personal representative's authority has temporal limitations. It simply does not last indefinitely.

Here, and as the majority acknowledges, Hill filed closing statements in March of 1991. *See* maj. op. at 223. Under the plain language of sections 15–12–608 and 15–12–610(1), Hill's authority to continue in the litigation as the estate's personal representative terminated in March of 1992 or "one year after the filing of a closing statement."

The majority's reading of the second sentence of section 15–12–608 assumes that there is no limit to the authority or ability of an individual to act as a personal representative so long as he or she acts "to protect the estate." The majority states "[w]hile her closing statements reflected that the assets of the estates had been distributed, the record contains no evidence that she had been enjoined or restrained by court order *from continuing to exercise her responsibility to protect the assets of the estates by maintaining this lawsuit.*" Maj. op. at 225 (emphasis added). I disagree. Without reappointment by the court administering the estate, Hill lacked statutory authority to act on behalf of the estate. *See* § 15–12–1008, 6B C.R.S. (1987).

Because the plain language of section 15–12–608 terminated Hill's "rights and power pertaining to the office of personal representative" in March of 1992, as a consequence of her own actions, *i.e.,* the filing of the closing statement, I can find no authority for her to continue as personal representative.

Accordingly, I respectfully dissent.

I am authorized to say that Chief Justice VOLLACK joins in this dissent.