IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,033

In the Matter of the Estate of THELMA J. TAYLOR.

SYLLABUS BY THE COURT

1.

When interpreting a statute, the fundamental rule to which all others are subordinate is that the intent of the Legislature governs if that intent can be ascertained. When a statute's language is plain and unambiguous, there is no need to resort to statutory construction.

2.

As part of the Kansas Probate Code, K.S.A. 59-1704 provides: "If any person embezzles or converts to his or her own use any of the personal property of a decedent or conservatee, such person shall be liable for double the value of the property so embezzled or converted."

3.

There is nothing in K.S.A. 59-1704 limiting its application to exclude individuals who were not court-appointed fiduciaries when the decedent's funds were taken before a probate proceeding began.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 18, 2019. Appeal from Atchison District Court; ROBERT J. BEDNAR, judge. Opinion filed January 22, 2021. Judgment of the Court of Appeals affirming in part and reversing in part the district court and remanding the case with directions is reversed on the issue subject to review. Judgment of the district court is affirmed on the issue subject to review.

*John W. Fresh*, of Farris & Fresh Law Office, of Atchison, argued the cause and was on the brief for appellant Laura Kelly.

*Patrick E. Henderson*, of Henderson Law Office, of Atchison, argued the cause and was on the briefs for appellee Boys and Girls Club.

The opinion of the court was delivered by

BILES, J.: The Boys and Girls Club of Atchison is the sole beneficiary of the Estate of Thelma J. Taylor. The Club objected to the executor's proposed distribution of assets, alleging the executor converted estate property. The district court agreed conversion occurred and ordered the executor to repay double the converted property's value as provided by K.S.A. 59-1704. A Court of Appeals panel unanimously upheld the conversion finding but split on whether the executor owed the double penalty. The majority held the statute did not apply because the property was taken before the executor was appointed by the court to administer the estate. *In re Estate of Taylor*, No. 120,033, 2019 WL 5275029, at *8 (Kan. App. 2019) (unpublished opinion). The Club seeks our review to resolve the disagreement over how to interpret K.S.A. 59-1704.

We affirm the district court's order imposing the double penalty. The statute's plain language does not limit its application as the panel majority held.

FACTUAL AND PROCEDURAL BACKGROUND

Thelma J. Taylor died testate on November 18, 2015. Her will expressed an intent that she would prepare a separate writing bequeathing personal property to later named individuals, but no writing was located. The will also directed that Taylor's executor "shall have absolute discretion to distribute any personal property not disposed of" by the separate writing, "or to sell all remaining property and add to the residue of my estate which shall then be paid in [its] entirety to the Boys and Girls Club of Atchison, Kansas." The will nominated Laura Kelly as executor.

2

Kelly filed a petition to admit the will to probate and for informal administration of Taylor's estate. The petition alleged the estate assets comprised household furnishings valued at $1,000 and $8,300 in life insurance proceeds. The district court granted the petition for informal administration and granted Kelly letters testamentary.

On the Club's motion, the court ordered a supplemental inventory. That inventory valued the assets subject to probate at just over $12,000. It also detailed "nonprobate assets" consisting of two "jointly owned" items: a checking account containing $150 and $11,000 cash in a safe deposit box. The supplemental inventory described the box's contents as "[j]ointly owned with Laura Kelly as joint tenants with the right of survivorship."

Kelly petitioned for final settlement, proposing to pay the Club $469.58 as the sole, residual beneficiary. This would have been the amount left after paying debts and expenses of more than $9,500, including Kelly's attorney fees and executor fees. The Club objected. It alleged Kelly converted estate assets, including the cash in the safe deposit box. It demanded Kelly be held liable under K.S.A. 59-1704 for double the value of any converted property.

The district court agreed with the Club after an evidentiary hearing. It ruled Kelly wrongfully converted the box's contents, breached her duties as the decedent's personal representative, and mishandled the decedent's property. The court found Kelly converted $11,000 of estate assets and ordered her to pay the estate $22,000 based on K.S.A. 59-1704. It rejected her arguments that Taylor had gifted the safe deposit box contents to her. It also rejected her alternative argument that she jointly owned the contents. The court denied the petition for final settlement, denied Kelly's claim for executor fees, and reserved ruling on the attorney fees claim.

3

The order does not identify when the conversion occurred, but there seems to be no dispute it happened before the estate proceedings began. Kelly testified she opened the safe deposit box and removed its contents "[a] couple of weeks" after Taylor died.

Kelly appealed. A Court of Appeals panel reached a mixed result. It unanimously agreed with the district court's determination that Kelly converted the property and was liable to the estate. It also unanimously rejected her alternative theories to support her ownership claims. 2019 WL 5275029, at *3, 5, 6.

But the panel divided over the double penalty. 2019 WL 5275029, at *9. Two panel members read the statute to exclude individuals who were not the estate's court-appointed fiduciary. That majority reversed the district court's double penalty. 2019 WL 5275029, at *8. Judge Steve Leben disagreed, arguing the statute's plain language controlled over the majority's strict-construction and caselaw considerations. 2019 WL 5275029, at *9-10 (Leben J., concurring in part and dissenting in part).

We granted the Club's petition for review to decide whether Kelly owed the double penalty. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review). Kelly did not seek review of the panel's adverse holdings on her gift and joint tenancy claims.

ANALYSIS

It is undisputed Kelly removed the safe deposit box contents for her personal use before she was appointed executor. The issue is whether the statute requires her to pay the estate double the value of the converted funds when she was not the estate's executor at the time of the taking. That answer turns on our interpretation of K.S.A. 59-1704.

4

*Standard of review*

> "'Statutory interpretation is a question of law over which an appellate court exercises unlimited review.' And when interpreting a statute, the court begins its 'analysis with the touchstone of statutory interpretation: legislative intent. The best and safest rule for discerning this intent is the plain language of the statute. Only when the statutory language is unclear or ambiguous [does the court] move on to consider tools of statutory construction.' [Citations omitted.]" *State v. Davis*, 312 Kan. 259, 267, 474 P.3d 722 (2020).

When interpreting statutes, it is axiomatic that the legislative intent controls, if ascertainable. *In re Estate of Strader*, 301 Kan. 50, 55, 339 P.3d 769 (2014). And in that regard, the statutory text "is our paramount consideration because 'the best and only safe rule for ascertaining the intention of the makers of any written law is to abide by the language they have used. And in abiding by the language the legislature has used, we assign common words their ordinary meaning.'" 301 Kan. at 55.

*Discussion*

We begin with the statute. It straightforwardly provides: "If *any person* embezzles or converts to his or her own use any of the personal property of a decedent or conservatee, such person shall be liable for double the value of the property so embezzled or converted." (Emphasis added.) K.S.A. 59-1704. But the statute has not always read this way.

Before a 1939 amendment, the earlier statute provided: "'If *any executor or administrator* shall neglect to sell any portion of the personal property which he is bound by law to sell, and retains, consumes or disposes of the same for his own benefit, he shall be charged therewith at double the value affixed thereto by the appraisers.'" (Emphasis added.) L. 1939, ch. 180, § 134. A Court of Appeals panel described this precursor and the amendment as follows:

5

"[T]he earlier statutory double liability for conversion provision was, on its face, applicable to executors and administrators. In contrast, K.S.A. 59-1704 directs the imposition of double liability upon 'any person' who has engaged in the conduct proscribed, that is, conversion of 'personal property of a decedent or conservatee.'" *In re Will of McDonald*, 16 Kan. App. 2d 293, 295, 822 P.2d 637 (1991).

Only a handful of Kansas cases have applied the double penalty provision, but their descriptions about its operation differ. For example, some have held that if a taking covered by the statute occurred, the double penalty was mandatory, even if the wrongdoer acted in good faith. See, e.g., *In re Conservatorship of Marcotte*, 243 Kan. 190, 195, 756 P.2d 1091 (1988) (quoting *In re Estate of Engels*, 10 Kan. App. 2d 103, 108, 692 P.2d 400 [1984]). Others held that since the statute is "of an exemplary character," generally a surety under its agreement with its principal is "not liable . . . for payment of double the value of property converted by its principal." *Koch v. Merchants Mutual Bonding Co.*, 211 Kan. 397, 403, 507 P.2d 189 (1973); see *Martin v. Hanschu*, 241 Kan. 521, 738 P.2d 96 (1987). Some of this caselaw guides the analysis required here. Some does not.

In *Engels*, a Court of Appeals panel held an executor who converted estate funds was liable for the double penalty, even though the executor took the funds "in good faith." *Engels*, 10 Kan. App. 2d at 107. The double penalty was mandatory, the panel held, "once a conversion by a fiduciary is found" because the statute provides that it "'shall'" be assessed. 10 Kan. App. 2d at 108. Then, citing the *Koch* court's conclusion that the penalty is exemplary in character, the panel observed, "[*t*]*hus the purpose of the statute is to punish the fiduciary who converts funds* and to warn others that the conduct is improper. The failure to impose the penalty neither punishes [the executor] *nor deters other fiduciaries from similar misconduct*." (Emphases added.) 10 Kan. App. 2d at 108.

6

*Engels* appears to be the root of later interpretations implying the term "any person" means only a fiduciary. But an obvious analytical problem arises because the *Engels* panel cited no authority for its restrictive view. See 10 Kan. App. 2d at 108. And since the *Engels* case dealt only with conversion by a fiduciary, its holding that the penalty was mandatory did not require any additional discussion about whether the term "any person" applied only to fiduciaries.

In *McDonald*, another Court of Appeals panel held a trustee of a testamentary trust who converted trust funds several years after the probate estate was closed was not liable for the double penalty. The panel reasoned that since the statute imposed a penalty, its application to decedents' personal property must be strictly construed and could not apply to the trust because it was a separate legal entity from the decedent's probate estate. *McDonald*, 16 Kan. App. 2d at 294-95. It noted the trust funds were not "personal property of a decedent." 16 Kan. App. 2d at 296.

In *Marcotte*, this court addressed whether the penalty applied to gifts made "'without court approval and control'" by a conservatee through his stock broker to the estate's co-conservators and their families. *Marcotte*, 243 Kan. at 193. The *Marcotte* court held the co-conservators converted the funds gifted to them, even though they did not solicit the gifts and the gifts were not the product of undue influence, fraud, or coercion. The court reasoned, "Conversion is the unauthorized assumption or exercise of a right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights," so "[t]he intent required for conversion is satisfied merely by the use or disposition of goods belonging to another." 243 Kan. at 194. Then, quoting *Engels* with approval, the court held that the co-conservators were liable for the double penalty for funds they personally received but not for gifts to other family members. The *Marcotte* court explained, "K.S.A. 59-1704 specifically applies to funds converted to one's own use and would therefore apply only to the $49,000.00 in gifts that went directly to the co-conservators." 243 Kan. at 195. But the court did not explain why family

7

members who used or disposed of the gifts to themselves could avoid double liability to the estate for their own conversion of the gifted funds other than quoting general language from *Engels*. *Marcotte*, 243 Kan. at 195.

Finally, in *Bolton v. Souter*, 19 Kan. App. 2d 384, 390, 872 P.2d 758 (1993), the case Kelly mainly relies on, another Court of Appeals panel held the double penalty did not apply to conversion of a conservatee's property. In that case, a proposed conservatee gave money to a friend while a petition was pending to establish the conservatorship. The friend converted the property to her own use, spending some money after the conservatorship was established. The *Bolton* panel considered whether the convertor was "any person" within the statute's meaning but followed no clear logical path in doing so.

First, the *Bolton* panel interpreted *Engels*, *Marcotte*, and *McDonald* to mean that the double penalty would not apply when the converted property was not the decedent's personal property but would apply to "the actions of a conservator . . . and executor and special administrator." *Bolton*, 19 Kan. App. 2d at 389. Next, the panel observed the penalty statute was included within the probate code's broader article that "contain[ed] provisions applicable to all estates, with most of the sections referring specifically to fiduciaries." 19 Kan. App. 2d at 389. Then, the panel noted a treatise on Kansas Probate Law and Practice had observed the 1939 amendments expanded the earlier statute by "extend[ing] liability to any person and includ[ing] the estates of wards as well as the estates of decedents." 19 Kan. App. 2d at 390. And the panel quoted the same treatise's definition of "'fiduciary'" as potentially including "'anyone appointed by, or under the control of, or accountable to the probate court, and either acting in a fiduciary capacity for another, or charged with duties in relation to any property, interest, trust, or estate for the benefit of another.'" 19 Kan. App. 2d at 390. Finally, without pointing out any relationship between those observations or their significance to the question before it, the *Bolton* panel concluded,

8

"Under the facts of this case, the relationship of Souter to Bolton might be deemed a fiduciary one, but it also may be characterized as that of coconspirators who were endeavoring (at Bolton's instigation and instance) to thwart the effect of an expected conservatorship and establish a separate emergency fund for Bolton's use unknown to a conservator.

"Souter obviously is a person, but she was not Bolton's conservator, *nor did she obtain dominion over his property at a time she was operating under the control of the district court*.

"Bolton was not a conservatee at the time he transferred the property to Souter, although the appointment had been completed before Souter finished the expenditure of Bolton's money.

"Giving K.S.A. 59-1704 the strict construction that we are required to give a statute penal in nature, we decline to apply it in a situation in which the proposed conservatee was attempting to hide assets for his future emergency use.

"K.S.A. 59-1704 is a part and portion of the Kansas Probate Code. We hold it is improper to widely apply its provisions to instances where the involved individual is not an appointee of the district court and the assets in question are not under the control of a court-appointed conservator, executor, or administrator." (Emphasis added.) *Bolton*, 19 Kan. App. 2d at 390-91.

The *Taylor* majority embraced *Bolton*, believing it "specifically addresse[d] the issue presented here" and stood for the proposition that it is "improper to apply the double penalty in instances where the individual is not an appointee of the district court." *Taylor*, 2019 WL 5275029, at *8. This rationale is open to at least two critiques.

First, the panel majority interpreted *Bolton* to prohibit assessing the double penalty against any person who is not an appointed estate fiduciary at the time of the conversion. But that view lacks precision. The *Bolton* panel actually stated it would not "widely

9

apply" the statute in that circumstance, so the *Taylor* majority misread the decision. *Bolton*, 19 Kan. App. 2d at 391. And while the fact that the wrongdoer in *Bolton* was not a fiduciary contributed to its outcome, so did other circumstances. In particular, the *Bolton* panel concerned itself with the fact that the wrongdoer got the money as part of the victim's own plan to hide assets from his conservatorship. See 19 Kan. App. 2d at 390.

And so, even if the *Bolton* panel correctly interpreted and applied the statute under that case's circumstances, a proposition we disagree with as explained below, the facts here would warrant a different outcome. Kelly gained access to the safe deposit box during Taylor's lifetime and took its contents shortly after her death. And Kelly did not report the cash in her initial inventory and estate valuation. She then used her position as executor to keep the court from learning of the property's existence and its ownership issue until the Club complained.

But whether *Bolton* correctly interpreted and applied the statute leads to the second and most important critique of the *Taylor* majority's decision because *Bolton*'s analysis is inconsistent with the statute's plain language and our court's emphasis on adhering to plain language interpretation. See, e.g., *Stanley v. Sullivan*, 300 Kan. 1015, 1018, 336 P.3d 870 (2014) ("This court has repeatedly emphasized that the plain language selected by the legislature, when it does not conflict with constitutional mandates, trumps both judicial decisions and the policies advocated by the parties.").

We view *Bolton* as unpersuasive. The "strict construction" the *Bolton* court adopted to exempt the facts presented from K.S.A. 59-1704's mandate is simply not rooted in the statute's text or triggered by ambiguity in its language. 19 Kan. App. 2d at 391. The Legislature chose to use the inclusive term "any person," which clearly captures Kelly within its meaning.

10

"'A statute is open to construction only where the language used therein requires interpretation or may be reasonably considered ambiguous. Thus, where no ambiguity appears, it has been presumed conclusively that the clear and explicit terms of a statute express the legislative intention. A plain and unambiguous statute is to be applied, and not interpreted, since such a statute speaks for itself, and any attempt to make it clearer is a vain labor and tends only to obscurity.'" *State v. Haug*, 237 Kan. 390, 392, 699 P.2d 535 (1985).

As Judge Leben pointed out in dissent, the fact the statute is clear would generally preempt application of any canon of construction, such as the rule of strict construction applied in *Engels* and *Bolton*. See *Nauheim v. City of Topeka*, 309 Kan. 145, 150, 432 P.3d 647 (2019) ("It is only when the statute's language is unclear or ambiguous that the court employs the canons of statutory construction, consults legislative history, or considers other background information to ascertain its meaning."). The panel majority's outcome requires adding language to the statute to limit its application only to a fiduciary who converts the decedent's property to their own use. Generally, a court will not speculate about legislative intent and will not read a statute to add something not readily found in it. *Graham v. Dokter Trucking Group*, 284 Kan. 547, Syl. ¶ 3, 161 P.3d 695 (2007).

The panel majority's approach also denies any effect to the Legislature's decision in 1939 to apply the double penalty to "any person," as opposed to the statute's previous application to "any executor or administrator." L. 1939, ch. 180, § 134. When a statute is amended for reasons other than clarifying an ambiguity, "courts ordinarily presume that by changing the language of a statute the legislature intended to change its effect, [although] this presumption may be strong or weak, according to the circumstances, and may be wanting altogether in a particular case." *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 773, 69 P.3d 1087 (2003).

Finally, the Legislature's decision to apply the penalty to "any person" who converts or embezzles a decedent's personal property is not an anomalous policy choice. Common forms of similar statutes in other states expressly impose double liability for property converted before an estate representative is appointed. In Minnesota, for example, a statute reads, "If any person embezzles, alienates, or converts to personal use any of the personal estate of a decedent or ward before the appointment of a representative, such person shall be liable for double the value of the property so embezzled, alienated, or converted." Minn. Stat. § 525.392. The Minnesota Supreme Court has said,

> "The apparent purpose of the statute is to give to those persons subsequently declared the legal owners of a decedent's estate a remedy against persons attempting to deprive them of their heritage and to double the damages recoverable because of the likelihood that the wrongdoer can in such cases successfully conceal his malfeasance." *Owens v. Owens*, 207 Minn. 489, 498, 292 N.W. 89 (1940).

Similar examples can be found in other jurisdictions. See Cal. Prob. Code § 859 ("If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to a conservatee, a minor, an elder, a dependent adult, a trust, or the estate of a decedent, or has taken, concealed, or disposed of the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse . . . the person shall be liable for twice the value of the property recovered by an action under this part."); Ga. Code Ann. § 53-6-2 ("Any person who, without authority of law, wrongfully intermeddles with or converts the personalty of a decedent whose estate is unrepresented shall be deemed an executor de son tort and as such shall be liable to the creditors and heirs or beneficiaries of the estate for double the value of the property so possessed and converted."); Okla. Stat. tit. 58, § 292(A) ("If any person, before the granting of letters testamentary or of administration, embezzles or alienates any of the monies, goods, chattel or effects of a decedent, the person is chargeable therewith, and liable to an action by the executor or administrator of the estate, for double

12

the value of the property so embezzled or alienated, to be recovered for the benefit of the estate.").

We hold there is nothing in K.S.A. 59-1704 limiting its application only to circumstances when the decedent's funds are taken by a court-appointed estate fiduciary after probate proceedings begin. The statute's plain language makes no allowance for the circumstances Kelly argues to escape its application. We hold the district court properly assessed the double penalty against Kelly under the plain language of K.S.A. 59-1704. The panel majority erred in reversing the double penalty.

The judgment of the Court of Appeals affirming in part, reversing in part, and remanding the case to the district court with directions, is reversed on the issue subject to our review. The district court's judgment is affirmed on the issue subject to our review.